**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **DIANE CALLOWAY; DORETTA WAGNER; CAROLYN ADAMS-HARRIS; BRIDGETT TIFT; JAMES BLOCH; MARY HANLEY; AUDREY MICHELLE OTIS; CHINA KELLAM; and SHARON MCKENZIE, Individually and on Behalf of All Others Similarly Situated,** | ) ) ) ) ) ) ) ) ) ) |
| **Plaintiffs,** | ) ) |
| **v.** | ) ) |
| **AT&T CORP.; AT&T INC.; AT&T TELEHOLDINGS, INC.; AT&T SERVICES, INC.; and AT&T OPERATIONS, INC.,** | ) ) ) ) ) ) |
| **Defendants.** | ) |

## COLLECTIVE ACTION COMPLAINT

Plaintiffs Diane Calloway, Doretta Wagner, Carolyn Adams-Harris, Bridgett Tift, James Bloch, Mary Hanley, Audrey Michelle Otis, China Kellam, and Sharon McKenzie, individually and on behalf of all others similarly situated (collectively "Plaintiffs"), for their Collective Action Complaint against Defendants AT&T Corp., AT&T Inc., AT&T Teleholdings, Inc., AT&T Services, Inc., and AT&T Operations, Inc. (collectively, "Defendants"), states as follows:

**Nature of Plaintiffs' Claims**

1. This is a collective action under the Fair Labor Standards Act ("FLSA") involving call center employees who were not paid by Defendants for all time worked. Defendants failed to

pay for all time worked by Plaintiffs and the putative collective, depriving these employees of their earned overtime wages. As of the date this Complaint was filed, approximately 378employees have consented to participate in this action, in addition to the named plaintiffs; copies of their consent forms are attached to this Complaint as Group Exhibit 1.

**Jurisdiction and Venue**

2.  This Court has original federal question jurisdiction under 28 U.S.C. §1331 for the claims brought under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq*.

3.  This Court has personal jurisdiction over the Defendants for reasons that include:

(a)  Defendants conduct business and enter into contracts within the State of Illinois and in this District and with persons and businesses located within the State of Illinois and in this District;

(b) As more specifically pled below, Defendants purposefully originated, implemented and controlled the wage and hour policies and practices that give rise to the FLSA claims asserted herein, and Defendants purposefully directed their improper wage and hour policies and practices at residents of the State of Illinois and their employees who reside in this District, among other people;

(c) Defendants have purposefully directed the marketing of their telephone services at residents and businesses located in the State of Illinois; and

(d) Defendants purposefully solicit Illinois residents to enter into service agreements.

4.  Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b), inasmuch as Defendants have offices, conduct business, and can be found in the Northern District of Illinois, and the

causes of action set forth herein have arisen and occurred in part in the Northern District of Illinois.

**Parties**

    *i.    Plaintiffs*

5. Plaintiff Sharon McKenzie is a resident of this judicial district, and has worked as an employee for Defendants for more than a dozen years. McKenzie has been compensated as an hourly paid non-exempt employee call center representative of Defendants in this District during the applicable FLSA statute of limitations period. A copy of Plaintiff McKenzie's consent form is attached hereto as part of Group Exhibit 1.

6. Plaintiff Doretta Wagner is a resident of this judicial district, and has worked as an employee for Defendants for approximately 18 years. Wagner has been compensated as an hourly paid non-exempt employee call center representative of Defendants in this District during the applicable FLSA statute of limitations period. A copy of Plaintiff Wagner's consent form is attached hereto as part of Group Exhibit 1.

7. Plaintiff Carolyn Adams-Harris is a resident of Cleveland, Ohio, and has worked as an employee for Defendants for approximately 19 years. Adams-Harris has been compensated as an hourly paid non-exempt employee call center representative of Defendants during the applicable FLSA statute of limitations period. A copy of Plaintiff Adams-Harris' consent form is attached hereto as part of Group Exhibit 1.

8. Plaintiff Bridget Tift is a resident of Warrensville Heights, Ohio, and has worked as an employee for Defendants for approximately six years. Tift has been compensated as an hourly paid non-exempt employee call center representative of Defendants during the

applicable FLSA statute of limitations period. A copy of Plaintiff Tift's consent form is attached hereto as part of Group Exhibit 1.

9. Plaintiff James Bloch is a resident of Bay Village, Ohio, and has worked as an employee for Defendants for approximately 17 years. Bloch has been compensated as an hourly paid non-exempt employee call center representative of Defendants during the applicable FLSA statute of limitations period. A copy of Plaintiff Bloch's consent form is attached hereto as part of Group Exhibit 1.

10. Plaintiff Mary Hanley is a resident of Saginaw, Michigan, and has worked as an employee for Defendants for approximately 17 years. Hanley has been compensated as an hourly paid non-exempt employee call center representative of Defendants during the applicable FLSA statute of limitations period. A copy of Plaintiff Hanley's consent form is attached hereto as part of Group Exhibit 1.

11. Audrey Michelle Otis is a resident of Detroit, Michigan, and has worked as an employee for Defendants for approximately 16 years. Otis has been compensated as an hourly paid non-exempt employee call center representative of Defendants during the applicable FLSA statute of limitations period. A copy of Plaintiff Otis' consent form is attached hereto as part of Group Exhibit 1.

12. Plaintiff China Kellam is a resident of Oak Park, Michigan, and has worked as an employee for Defendants for approximately 17 years. Kellam has been compensated as an hourly paid non-exempt employee call center representative of Defendants during the applicable FLSA statute of limitations period. A copy of Plaintiff Kellam's consent form is attached hereto as part of Group Exhibit 1.

13. Plaintiff Diane Calloway is a resident of Farmington Hills, Michigan, and has worked as an employee for Defendants for approximately 17 years. Calloway has been compensated as an hourly paid non-exempt employee call center representative of Defendants during the applicable FLSA statute of limitations period. A copy of Plaintiff Calloway's consent form is attached hereto as part of Group Exhibit 1.

14. Additional hourly paid non-exempt employees of Defendants have opted in to this matter and their consent forms are hereto as part of Group Exhibit 1. Plaintiffs, these additional opt-ins, and other employees similarly situated are referred to as "Plaintiffs".

### ii.    AT&T Corp.

15. Defendant AT&T Corp. is a New York Corporation doing business as a telecommunications holding company. It shares control over Plaintiffs and members of the putative collective alleged in this action.

16. AT&T Corp. is a direct subsidiary of AT&T, Inc., according to its representations to the Court in *LaMarr v. Illinois Bell Telephone Company*, 15 C 8660, N.D. Ill. 2014.

17. AT&T Corp. has acted and continues to act directly or indirectly in the interest of the employers of Plaintiffs and the putative collective alleged herein, in relation to Plaintiffs and the putative collective alleged herein, by exercising control over the working conditions of those employees, including as set forth herein.

18. AT&T Corp. created a Corporate Code of Conduct that controlled and mandated operations and working conditions at all its subsidiaries, including the co-defendants herein, mandating, amongst other things, that all supervisors and other management employees of call center representatives, nationwide, are responsible for reporting, for payroll processing,

all hours worked by call center representatives, including without limitation, incidental overtime.

19. AT&T Corp. possessed the power to hire and fire call center representatives nationwide, and also to determine the rate and method of payment for such employees, including Plaintiffs, by creating and controlling the Corporate Code of Conduct, which establishes, *inter alia*, disciplinary procedures and termination criteria for violation of various corporate policies and procedures that all nationwide call center representatives must follow.

20. AT&T Corp. possessed the power to hire and fire call center representatives nationwide, and also to determine the rate and method of payment for such employees, including Plaintiffs, by negotiating with the union that represents the plaintiffs. Such terms include, *inter alia*, hiring criteria, job duties, pay progression, progressive discipline, and termination clauses.

21. AT&T Corp. possessed the power to hire and fire call center representatives nationwide, including Plaintiffs, by employing members of the "Force Team", who were charged with recording attendance and all time worked beyond scheduled hours through exception reporting in the IEX computer software program, job performance, discipline and termination of call center associates, at each of the call centers at issue in this lawsuit.

22. AT&T Corp. has created, maintains and controls nationwide databases where, amongst other discrete data sets, are contained the actual call-queue Login and Logout time stamps within the CTI system for all call center representatives nationwide, including Plaintiffs, and including the Logouts from calls that occurred after the end time of their scheduled shifts.

23. During the collective period and at certain call center centers across the country, each of the Defendants have utilized the CTI Logout data to calculate overtime pay for call center representatives without independent self-reporting, or rounding, of time worked.

24. Defendant AT&T Corp. has created, maintains and controls a nationwide intranet software platform that allows all call center representatives, including Plaintiffs, to use a unique user name and password to log in and log out of shared-server software applications and operating systems through their local computers as remote terminals to those platforms. Such log in and log out data is recorded and stored and will demonstrate the hours of work performed, but not paid, by call center associates, including Plaintiffs.

25. A unified nationwide payroll system, called eLink, is used to generate paychecks for all domestic call center associates of Defendants, including all of the opt-in Plaintiffs and the putative collective alleged in this matter.

26. The first step in AT&T Corp.'s processing of domestic call center employee payroll is generating scheduled shift hours, called "tours", in the IEX computer system.

27. All time worked by domestic call center employees outside of scheduled shift time is recorded in the IEX software as "exceptions" to scheduled shift hours.

28. The next step in processing AT&T Corp.'s domestic call center employees' payroll is converting the IEX schedules and exceptions, if any, into eLink payroll data. If no exceptions are entered into IEX for a call center associate, AT&T's corporate policy and practice is to pay call center associates according to their scheduled shift hours, regardless of the actual hours worked.

29. The software platform that converts IEX schedule information into eLink payroll data is called "TVI".

30. The TVI software platform uses a "rounding" function in its conversion process that rounds away time domestic call center employees work after the end of their scheduled shifts, regardless if the time was recorded by the employer, self-reported or unreported.

31. The rounding function of the TVI software platform is facially inequitable, because it results in domestic call center employees - including the opt-in Plaintiffs and putative collective alleged herein - having more minutes of time worked rounded away than paid, to the Plaintiffs and putative collective's detriment.

32. AT&T Corp. violated the Corporate Code of Conduct by failing to report the time worked by call center employees after the end of their scheduled shifts, as recorded in, without limitation: (1) the CTI call queue Login/Logout data, (2) the Application and Operating System Platform Login/Logout data; (3) all time rounded away by the TVI software platform; (4) all incidental overtime requests that were reported but not paid.

33. AT&T Corp. also violated its Corporate Code of Conduct when supervisors failed to accurately report all time worked by call center employees, and by failing to discipline supervisors who failed to report all time worked by call center employees.

34. The work performed by Plaintiffs and the putative collective as alleged herein has benefitted Defendant AT&T Corp.

35. AT&T Corp., through its Corporate Code of Conduct, has implemented a nationwide training program for call center managers, call center representatives, Force Team managers and employees and management employees on the day-to-day execution of their job duties

and responsibilities, including familiarity with the Corporate Code of Conduct and other corporate policies and procedures.

36. At all relevant times, Defendant AT&T Corp. was the "employer" and/or a "joint employer" of Plaintiffs and members of the putative collective alleged herein, as the term "Employer" is defined under the FLSA.

37. AT&T Corp. has had the power to supervise and control employee work schedules or conditions of payments for Plaintiffs and the putative collective alleged herein, it has determined the rate and method of payment for work performed by those employees, and it has maintained employment records and data for those employees, as specifically outlined under AT&T Corporate Code of Conduct and other human resources and personnel directives issued nationwide.

### iii.      AT&T Inc.

38. Defendant AT&T Inc. is a New York Corporation doing business as a telecommunications holding company.  It is the world's largest telecommunications company.  It shares control over Plaintiffs and members of the putative collective alleged in this action.

39. AT&T, Inc. has acted and continues to act directly or indirectly in the interest of the employers of Plaintiffs and the putative collective alleged herein, in relation to Plaintiffs and the putative collective alleged herein, by exercising control over the working conditions of those employees, including as set forth herein.

40. AT&T Inc. created a Corporate Code of Conduct that controlled and mandated operations and working conditions at all its subsidiaries, including the co-defendants herein, mandating, amongst other things, that all supervisors and other management employees of call center

representatives, nationwide, are responsible for reporting, for payroll processing, all hours worked by call center representatives, including without limitation, incidental overtime.

41. AT&T Inc. possessed the power to hire and fire call center representatives nationwide, and also to determine the rate and method of payment for such employees, including Plaintiffs, by creating and controlling the Corporate Code of Conduct, which establishes, *inter alia*, disciplinary procedures and termination criteria for violation of various corporate policies and procedures that all nationwide call center representatives must follow.

42. AT&T Inc. possessed the power to hire and fire call center representatives nationwide, and also to determine the rate and method of payment for such employees, including Plaintiffs, by negotiating with the union that represents the plaintiffs. Such terms include, *inter alia*, hiring criteria, job duties, pay progression, progressive discipline, and termination clauses.

43. AT&T Inc. possessed the power to hire and fire call center representatives nationwide, including Plaintiffs, by employing members of the "Force Team", who were charged with recording attendance and all time worked beyond scheduled hours through exception reporting in the IEX computer software program, job performance, discipline and termination of call center associates at each of the call centers at issue in this lawsuit.

44. AT&T Inc. has created, maintains and controls nationwide databases where, amongst other discrete data sets, are contained the actual call-queue Login and Logout time stamps within the CTI system for all call center representatives nationwide, including Plaintiffs, and including the Logouts from calls that occurred after the end time of their scheduled shifts.

45. During the collective period and at certain call center centers across the country, each of the Defendants have utilized the CTI Logout data to calculate overtime pay for call center representatives without independent self-reporting, or rounding, of time worked.

46. Defendant AT&T Inc. has created, maintains and controls a nationwide intranet software platform that allows all call center representatives, including Plaintiffs, to use a unique user name and password to log in and log out of shared-server software applications and operating systems through their local computers as remote terminals to those platforms. Such log in and log out data is recorded and stored and will demonstrate the hours of work performed, but not paid, by call center associates, including Plaintiffs.

47. A unified nationwide payroll system, called eLink, is used to generate paychecks for all domestic call center associates of Defendants, including all of the opt-in Plaintiffs and the putative collective alleged in this matter.

48. The first step in AT&T Inc.'s processing of domestic call center employee payroll is generating scheduled shift hours, called "tours", in the IEX computer system.

49. All time worked by domestic call center employees outside of scheduled shift time is recorded in the IEX software as "exceptions" to scheduled shift hours.

50. The next step in processing AT&T Inc.'s domestic call center employees' payroll is converting the IEX schedules and exceptions, if any, into eLink payroll data. If no exceptions are reported for a call center associate in IEX, AT&T's corporate policy and practice is to pay call center associates according to their scheduled shift hours, regardless of actual hours worked.

51. The software platform that converts IEX schedule information into eLink payroll data is called "TVI".

52. The TVI software platform uses a "rounding" function in its conversion process that rounds away time domestic call center employees work after the end of their scheduled shifts, regardless if it was recorded by the employer, self-reported or unreported.

53. The rounding function of the TVI software platform is facially inequitable, because it results in domestic call center employees - including the opt-in Plaintiffs and putative collective alleged herein - having more minutes of time worked rounded away than paid, to the detriment of the Plaintiffs and members of the putative collective.

54. AT&T Inc. violated the Corporate Code of Conduct by failing to report the time worked by call center employees after the end of their scheduled shifts, as recorded in, without limitation: (1) the CTI call queue Login/Logout data, (2) the Application and Operating System Platform Login/Logout data; (3) all time rounded away by the TVI software platform; (4) all incidental overtime requests that were reported but not paid.

55. AT&T Inc. also violated its Corporate Code of Conduct when supervisors failed to accurately report all time worked by call center employees, and by failing to discipline supervisors who failed to report all time worked by call center employees.

56. The work performed by Plaintiffs and the putative collective as alleged herein has benefitted Defendant AT&T Inc.

57. AT&T, Inc., through its Corporate Code of Conduct, has implemented a nationwide training program for call center managers, call center representatives, Force Team managers and employees and management employees on the day-to-day execution of their job duties

and responsibilities, including familiarity with the Corporate Code of Conduct and other corporate policies and procedures.

58. At all relevant times, Defendant AT&T Inc. was the "employer" and/or a "joint employer" of Plaintiffs and members of the putative collective alleged herein, as the term "Employer" is defined under the FLSA.

59. AT&T Inc. has had the power to supervise and control employee work schedules or conditions of payments for Plaintiffs and the putative collective alleged herein, it has determined the rate and method of payment for work performed by those employees, and it has maintained employment records and data for those employees, as specifically outlined under AT&T Corporate Code of Conduct and other human resources and personnel directives issued nationwide.

60. All call center employees, including Plaintiffs, have an AT&T Inc. user identification login, in order to access AT&T, Inc. servers for various purposes.

61. The AT&T Inc. user identification is issued by AT&T, Inc. to the employee.

62. The AT&T Inc. user ID is mapped to associate the identification to the AT&T user ID of the employee.

63. All call center employees who are the subject of this lawsuit also have an ASON user ID, also issued by AT&T Inc.

64. All call center employees also have a call queue (CTI) log in ID, also issued by AT&T Inc.

  *iv.  AT&T Teleholdings, Inc.*

65. Defendant AT&T Teleholdings, Inc. is a Delaware corporation, with offices at 30 South Wacker Drive in Chicago, Illinois. It was formerly known as "Ameritech Corporation", and as "SBC Teleholdings, Inc."; and was one of the seven Regional Bell Operating Companies that was created following the breakup of the Bell System. It is a party to a certain employment Agreement between certain AT&T entities and the International Brotherhood of Electrical Workers, including Plaintiffs and the collective alleged herein. It employs over 70,000 workers, including Plaintiffs.

66. Defendant AT&T Teleholdings, Inc. owns Illinois Bell Telephone Company, Indiana Bell Telephone Company, Inc., Wisconsin Bell, Inc., Michigan Bell Telephone Company and Ohio Bell Telephone Company, as well as Pacific Bell (d/b/a AT&T California) and other regional telephone service providers.

67. Defendant AT&T Teleholdings, Inc. provides local and long-distance telephone and cellular communication services, paging, security, cable TV, Internet access, and directory publishing services to approximately 12 million customers in Illinois, Indiana, Michigan, Ohio, and Wisconsin. It is a subsidiary of Defendant AT&T, Inc. It shares control over Plaintiffs and members of the putative collective alleged in this action.

68. Defendant AT&T Teleholdings Inc. has acted and continues to act directly or indirectly in the interest of the employers of Plaintiffs and the putative collective alleged herein, in relation to Plaintiffs and the putative collective alleged herein, by exercising control over the working conditions of those employees, including as set forth herein.

69. AT&T Teleholdings Inc. created and/or implemented a Corporate Code of Conduct that controlled and mandated operations and working conditions at all its subsidiaries, including

the co-defendants herein, mandating, amongst other things, that all supervisors and other management employees of call center representatives, nationwide, are responsible for reporting, for payroll processing, all hours worked by call center representatives, including without limitation, incidental overtime.

70. AT&T Teleholdings Inc. possessed the power to hire and fire call center representatives nationwide, and also to determine the rate and method of payment for such employees, including Plaintiffs, by creating and controlling the Corporate Code of Conduct, which establishes, *inter alia*, disciplinary procedures and termination criteria for violation of various corporate policies and procedures that all nationwide call center representatives must follow.

71. AT&T Teleholdings Inc. possessed the power to hire and fire call center representatives nationwide, and also to determine the rate and method of payment for such employees, including Plaintiffs, by negotiating with the union that represents the plaintiffs. Such terms include, *inter alia*, hiring criteria, job duties, pay progression, progressive discipline, and termination clauses.

72. AT&T Teleholdings Inc. possessed the power to hire and fire call center representatives nationwide, including Plaintiffs, by employing members of the "Force Team", who were charged with recording attendance and all time worked beyond scheduled hours through exception reporting in the IEX computer software program, job performance, discipline and termination of call center associates at each of the call centers at issue in this lawsuit.

73. AT&T Teleholdings Inc. has created, maintains and controls nationwide databases where, amongst other discrete data sets, are contained the actual call-queue Login and Logout time

stamps within the CTI system for all call center representatives nationwide, including Plaintiffs, and including the Logouts from calls that occurred after the end time of their scheduled shifts.

74. During the collective period and at certain call center centers across the country, each of the Defendants have utilized the CTI Logout data to calculate overtime pay for call center representatives without independent self-reporting, or rounding, of time worked.

75. Defendant AT&T Teleholdings Inc. has created, and/or maintains and controls a nationwide intranet software platform that allows all call center representatives, including Plaintiffs, to use a unique user name and password to log in and log out of shared-server software applications and operating systems through their local computers as remote terminals to those platforms. Such log in and log out data is recorded and stored and will demonstrate the hours of work performed, but not paid, by call center associates, including Plaintiffs.

76. A unified nationwide payroll system, called eLink, is used to generate paychecks for all domestic call center associates of Defendants, including all of the opt-in Plaintiffs and the putative collective alleged in this matter.

77. The first step in AT&T Teleholdings Inc.'s processing of domestic call center employee payroll is generating scheduled shift hours, called "tours", in the IEX computer system.

78. All time worked by domestic call center employees outside of scheduled shift time is recorded in the IEX software as "exceptions" to scheduled shift hours.

79. The next step in processing AT&T Teleholdings Inc.'s domestic call center employees' payroll is converting the IEX schedules and exceptions, if any, into eLink payroll data. If no

exceptions are reported for a call center associate in IEX, AT&T's corporate policy and procedure is to pay call center associates according to their scheduled shift hours, regardless of actual hours worked.

80. The software platform that converts IEX schedule information into eLink payroll data is called "TVI".

81. The TVI software platform uses a "rounding" function in its conversion process that rounds away time domestic call center employees work after the end of their scheduled shifts, regardless if it was recorded by the employer, self-reported or unreported.

82. The rounding function of the TVI software platform is facially inequitable, because it results in domestic call center employees - including the opt-in Plaintiffs and putative collective alleged herein - having more minutes of time worked rounded away than paid, to the detriment of the Plaintiffs and members of the putative collective.

83. AT&T Teleholdings Inc. violated its Corporate Code of Conduct by failing to report the time worked by call center employees after the end of their scheduled shifts, as recorded in, without limitation: (1) the CTI call queue Login/Logout data, (2) the Application and Operating System Platform Login/Logout data; (3) all time rounded away by the TVI software platform; (4) all incidental overtime requests that were reported but not paid.

84. AT&T Teleholdings Inc. also violates the Corporate Code of Conduct when supervisors fail to accurately report all time worked by call center employees, and by failing to discipline supervisors who failed to report all time worked by call center employees.

85. The work performed by Plaintiffs and the putative collective as alleged herein has benefitted Defendant AT&T Teleholdings Inc.

86. AT&T Teleholdings, Inc., through its Corporate Code of Conduct, has implemented a nationwide training program for call center managers, call center representatives, Force Team managers and employees and management employees on the day-to-day execution of their job duties and responsibilities, including familiarity with the Corporate Code of Conduct and other corporate policies and procedures.

87. At all relevant times, Defendant AT&T Teleholdings Inc. was the "employer" and/or a "joint employer" of Plaintiffs and members of the putative collective alleged herein, as the term "Employer" is defined under the FLSA.

88. AT&T Teleholdings Inc. has had the power to supervise and control employee work schedules or conditions of payments for Plaintiffs and the putative collective alleged herein, it has determined the rate and method of payment for work performed by those employees, and it has maintained employment records and data for those employees, as specifically outlined under AT&T Corporate Code of Conduct and other human resources and personnel directives issued nationwide.

### v. AT&T Services, Inc.

89. AT&T Services, Inc. is a Delaware corporation, formerly known as SBC Services, Inc.

90. AT&T Services, Inc. provides transaction processing services, billing, payroll, accounts payable, customer remittance, fixed assets record keeping, GL processing, personnel management and specialized services to the AT&T parent companies and to related affiliates, including each of the other Defendants, in this judicial district.

91. AT&T Services, Inc. has acted and continues to act directly or indirectly in the interest of the employers of Plaintiffs and the putative collective alleged herein, in relation to Plaintiffs

and the putative collective alleged herein, by exercising control over the working conditions of those employees, including as set forth herein.

92. AT&T Services, Inc. created and/or implemented a Corporate Code of Conduct that controlled and mandated operations and working conditions at all its subsidiaries, including the co-defendants herein, mandating, amongst other things, that all supervisors and other management employees of call center representatives, nationwide, are responsible for reporting, for payroll processing, all hours worked by call center representatives, including without limitation, incidental overtime.

93. AT&T Services, Inc. possessed the power to hire and fire call center representatives nationwide, and also to determine the rate and method of payment for such employees, including Plaintiffs, by creating and controlling the Corporate Code of Conduct, which establishes, *inter alia*, disciplinary procedures and termination criteria for violation of various corporate policies and procedures that all nationwide call center representatives must follow.

94. AT&T Services, Inc. possessed the power to hire and fire call center representatives nationwide, and also to determine the rate and method of payment for such employees, including Plaintiffs, by negotiating with the union that represents the plaintiffs. Such terms include, *inter alia*, hiring criteria, job duties, pay progression, progressive discipline, and termination clauses.

95. AT&T Services, Inc. possessed the power to hire and fire call center representatives nationwide, including Plaintiffs, by employing members of the "Force Team", who were charged with recording attendance and all time worked beyond scheduled hours through

exception reporting in the IEX computer software program, job performance, discipline and termination of call center associates at each of the call centers at issue in this lawsuit.

96. AT&T Services, Inc. has created, maintains and controls nationwide databases where, amongst other discrete data sets, are contained the actual call-queue Login and Logout time stamps within the CTI system for all call center representatives nationwide, including Plaintiffs, and including the Logouts from calls that occurred after the end time of their scheduled shifts.

97. During the collective period and at certain call center centers across the country, each of the Defendants have utilized the CTI Logout data to calculate overtime pay for call center representatives without independent self-reporting, or rounding, of time worked.

98. Defendant AT&T Services, Inc. has created, maintains and controls a nationwide intranet software platform that allows all call center representatives, including Plaintiffs, to use a unique user name and password to log in and log out of shared-server software applications and operating systems through their local computers as remote terminals to those platforms. Such log in and log out data is recorded and stored and will demonstrate the hours of work performed, but not paid, by call center associates, including Plaintiffs.

99. A unified nationwide payroll system, called eLink, is used to generate paychecks for all domestic call center associates of Defendants, including all of the opt-in Plaintiffs and the putative collective alleged in this matter.

100. The first step in AT&T Services, Inc.'s processing of domestic call center employee payroll is generating scheduled shift hours, called "tours", in the IEX computer system.

101. All time worked by domestic call center employees outside of scheduled shift time is recorded in the IEX software as "exceptions" to scheduled shift hours.

102. The next step in processing AT&T Services, Inc.'s domestic call center employees' payroll is converting the IEX schedules and exceptions, if any, into eLink payroll data. If no exceptions are reported for a call center associate in IEX, AT&T's corporate policy and practice is to pay call center associates according to their scheduled shift hours, regardless of actual hours worked.

103. The software platform that converts IEX schedule information into eLink payroll data is called "TVI".

104. The TVI software platform uses a "rounding" function in its conversion process that rounds away time domestic call center employees work after the end of their scheduled shifts, regardless if it was recorded by the employer, self-reported or unreported.

105. The rounding function of the TVI software platform is facially inequitable, because it results in domestic call center employees - including the opt-in Plaintiffs and putative collective alleged herein - having more minutes of time worked rounded away than paid, to the detriment of the Plaintiffs and members of the putative collective.

106. AT&T Services, Inc. violated its Corporate Code of Conduct by failing to report the time worked by call center employees after the end of their scheduled shifts, as recorded in, without limitation: (1) the CTI call queue Login/Logout data, (2) the Application and Operating System Platform Login/Logout data; (3) all time rounded away by the TVI software platform; (4) all incidental overtime requests that were reported but not paid.

107. AT&T Services, Inc. also violated its Corporate Code of Conduct when supervisors fail to accurately report all time worked by call center employees, and by failing to discipline supervisors who failed to report all time worked by call center employees.

108. The work performed by Plaintiffs and the putative collective as alleged herein has benefitted Defendant AT&T Services, Inc.

109. AT&T Services, Inc., through its Corporate Code of Conduct, has implemented a nationwide training program for call center managers, call center representatives, Force Team managers and employees and management employees on the day-to-day execution of their job duties and responsibilities, including familiarity with the Corporate Code of Conduct and other corporate policies and procedures.

110. At all relevant times, Defendant AT&T Services, Inc. was the "employer" and/or a "joint employer" of Plaintiffs and members of the putative collective alleged herein, as the term "Employer" is defined under the FLSA.

111. AT&T Services, Inc. has had the power to supervise and control employee work schedules or conditions of payments for Plaintiffs and the putative collective alleged herein, it has determined the rate and method of payment for work performed by those employees, and it has maintained employment records and data for those employees, as specifically outlined under AT&T Corporate Code of Conduct and other human resources and personnel directives issued nationwide.

112. AT&T Services, Inc. is reflected as the employer on Plaintiffs' statement of earnings, taxes and allotments (e.g., pay stub), and, upon information and belief, is reflected as the employer on each of the opt-in plaintiffs' pay stubs.

113. The work performed by Plaintiffs and the putative collective alleged herein has benefitted Defendant AT&T Services, Inc.

### vi.    *AT&T Operations, Inc.*

114. AT&T Operations, Inc. is a Delaware Corporation, formerly known as SBC Operations, Inc., which merged with another AT&T affiliate in August, 2012.

115. AT&T Operations, Inc. provides wireless telecommunications services. AT&T Operations, Inc. was formerly known as SBC Operations, Inc., and before that as Southwestern Bell Communications, Inc. The company was incorporated in 1995 and is based in Dallas, Texas. AT&T Operations, Inc. operates as a subsidiary of AT&T, Inc.

116. AT&T Operations, Inc. promulgated mandatory rules, policies, and practices regarding the manner and method by which Plaintiffs were to sell or attempt to sell wireless services.

117. AT&T Operations, Inc. possessed the power to hire and fire call center representatives nationwide,   and also to determine the rate and method of payment for such employees, including Plaintiffs, by creating and controlling the Corporate Code of Conduct, which establishes, *inter alia*, disciplinary procedures and termination criteria for violation of various corporate policies and procedures that all nationwide call center representatives must follow.

118.  AT&T Operations, Inc. possessed the power to hire and fire call center representatives nationwide, and also to determine the rate and method of payment for such employees, including Plaintiffs, by negotiating with the union that represents the plaintiffs.  Such terms include, *inter alia*, hiring criteria, job duties, pay progression, progressive discipline, and termination clauses.

119.  AT&T Operations, Inc. possessed the power to hire and fire call center representatives nationwide, including Plaintiffs, by employing members of the "Force Team", who were charged with recording attendance and all time worked beyond scheduled hours through exception reporting in the IEX computer software program, job performance, discipline and termination of call center associates at each of the call centers at issue in this lawsuit.

120.  AT&T Operations, Inc. has created, maintains and controls nationwide databases where, amongst other discrete data sets, are contained the actual call-queue Login and Logout time stamps within the CTI system for all call center representatives nationwide, including Plaintiffs, and including the Logouts from calls that occurred after the end time of their scheduled shifts.

121.  During the collective period and at certain call center centers across the country, each of the Defendants have utilized the CTI Logout data to calculate overtime pay for call center representatives without independent self-reporting, or rounding, of time worked.

122. Defendant AT&T Operations, Inc. has created, maintains and controls a nationwide intranet software platform that allows all call center representatives, including Plaintiffs, to use a unique user name and password to log in and log out of shared-server software applications and operating systems through their local computers as remote terminals to those platforms.  Such log in and log out data is recorded and stored and will demonstrate the hours of work performed, but not paid, by call center associates, including Plaintiffs.

123.  A unified nationwide payroll system, called eLink, is used to generate paychecks for all domestic call center associates of Defendants, including all of the opt-in Plaintiffs and the putative collective alleged in this matter.

124. The first step in AT&T Operations, Inc.'s processing of domestic call center employee payroll is generating scheduled shift hours, called "tours", in the IEX computer system.

125. All time worked by domestic call center employees outside of scheduled shift time is recorded in the IEX software as "exceptions" to scheduled shift hours.

126. The next step in processing AT&T Operations, Inc.'s domestic call center employees' payroll is converting the IEX schedules and exceptions, if any, into eLink payroll data. If no exceptions are reported for a call center associate, AT&T's corporate policy and practice is to pay call center associates according to their scheduled shift hours, regardless of actual hours worked.

127. The software platform that converts IEX schedule information into eLink payroll data is called "TVI".

128. The TVI software platform uses a "rounding" function in its conversion process that rounds away time domestic call center employees work after the end of their scheduled shifts, regardless if it was recorded by the employer, self-reported or unreported.

129. The rounding function of the TVI software platform is facially inequitable, because it results in domestic call center employees - including the opt-in Plaintiffs and putative collective alleged herein - having more minutes of time worked rounded away than paid, to the detriment of Plaintiffs and members of the putative collective.

130. AT&T Operations, Inc. violated its Corporate Code of Conduct by failing to report the time worked by call center employees after the end of their scheduled shifts, as recorded in, without limitation: (1) the CTI call queue Login/Logout data, (2) the Application and

Operating System Platform Login/Logout data; (3) all time rounded away by the TVI software platform; (4) all incidental overtime requests that were reported but not paid.

131. AT&T Operations, Inc. also violated its Corporate Code of Conduct when supervisors failed to accurately report all time worked by call center employees, and by failing to discipline supervisors who failed to report all time worked by call center employees.

132. The work performed by Plaintiffs and the putative collective as alleged herein has benefitted Defendant AT&T Operations, Inc.

133. AT&T, Operations, Inc., through its Corporate Code of Conduct, has implemented a nationwide training program for call center managers, call center representatives, Force Team managers and employees and management employees on the day-to-day execution of their job duties and responsibilities, including familiarity with the Corporate Code of Conduct and other corporate policies and procedures.

134. At all relevant times, Defendant AT&T Operations, Inc. was the "employer" and/or a "joint employer" of Plaintiffs and members of the putative collective alleged herein, as the term "Employer" is defined under the FLSA.

135. AT&T Operations, Inc. has had the power to supervise and control employee work schedules or conditions of payments for Plaintiffs and the putative collective alleged herein, it has determined the rate and method of payment for work performed by those employees, and it has maintained employment records and data for those employees, as specifically outlined under AT&T Corporate Code of Conduct and other human resources and personnel directives issued nationwide.

**Factual Background**

136. Defendants AT&T Corp., AT&T, Inc., AT&T Teleholdings, Inc., AT&T Services, Inc., and AT&T Operations, Inc., and each of them, were directly and jointly engaged in the business of, among other things, operating call centers in Illinois, Michigan and Ohio and elsewhere, where Plaintiffs and putative collective members labored under the rounding policy at issue herein within the last three years, specifically engaged in various customer interaction and activity, including without limitation, "customer retention", i.e., attempting to retain current customers of the Company and certain related affiliates of the Company who subscribe to various internet, television and/or telephone services provided by the Company.

137. During at least some portion of time during the last three years, Defendants AT&T Corp., AT&T, Inc., AT&T Teleholdings, Inc., AT&T Services, Inc., and AT&T Operations, Inc., and each of them, directed, implemented and controlled the rounding policies and practices at issue in this lawsuit. Further, Defendants both implemented and ratified the rounding policies and practices on Plaintiff and the putative collective members.

138. During at least some portion of time during the last three years, Defendants AT&T Corp., AT&T, Inc., AT&T Teleholdings, Inc., AT&T Services, Inc., and AT&T Operations, Inc., and each of them, was the "employer" of the Plaintiff and members of the putative collective, as the term "Employer" is defined under the FLSA. Alternatively, Defendants AT&T Corp., AT&T, Inc., AT&T Teleholdings, Inc., AT&T Services, Inc., and AT&T Operations, Inc., and each of them, jointly employed Plaintiff and the putative collective members with its or their wholly-owned and controlled subsidiaries as well as its or their parent corporation and affiliates, including AT&T Teleholdings, Inc., AT&T Services, Inc., AT&T Corp., AT&T Operations, Inc., and each of them. As such, Defendants AT&T Corp.,

AT&T, Inc., AT&T Teleholdings, Inc., AT&T Services, Inc., and AT&T Operations, Inc., and each of them, are jointly and severally liable for the FLSA violations described herein.

139. Defendants directed, implemented and controlled the wage and rounding policies and practices at issue in this lawsuit. Further, Defendants ratified and implemented the wage and rounding policies and practices used on Plaintiffs and the collective members.

140. Plaintiffs have worked as call center employees for Defendants, along with hundreds of other call center employees employed by Defendants during the three years prior to the filing of this action to the present (the "Class Period").

141. Plaintiffs' and their co-workers' duties have included speaking via telephone with customers, former customers and potential customers of Defendants' internet, television, telephone and related services.

142. Plaintiffs are typically scheduled to work at least for forty (40) hours per week, in addition to at least thirty (30) minutes daily of unpaid meal breaks.

143. Plaintiffs and their co-workers arrive for work in the morning and typically begin working by first reviewing any promotional or operational materials relating to the most current customer offers, bonus structures and system requirements delivered via hand or email or other means for their review outside of scheduled work hours. These materials are sometimes referred to as "desk drops". The review of these materials is necessary for call center associates to perform their work duties.

144. In addition, call center associates begin their work day by logging on to various computer programs they use in their duties, which can take several minutes. These computer systems include without limitation the operating system platform (WINDOWS or analogous

operating platform that allows employees to log in to the shared server applications from their remote terminal using their unique name and password), IEX, CCS, ASON, CPSOS, System X, CREM and finally, when they are ready and available to accept customer calls, they log into the CTI call queue software platform.

145. Plaintiffs and their co-workers are expected by their employers to be ready and available to receive telephone calls at the start time of their scheduled shifts, by turning on their mechanical equipment and by logging onto and operating a variety of software programs used in their work (herein, their "ready and available" status).

146. Plaintiffs and their co-workers are carefully monitored by Defendants' supervisors, managers and Defendants' various computer systems to determine their readiness for work at the beginning and end times of their scheduled shifts and at the start and end of their unpaid meal breaks.

147. The period of time contained within call center associate scheduled shift hours is insufficient to capture all the time Plaintiffs spend getting to the "ready and available" status so Plaintiffs perform uncompensated work at the beginning of their shifts. This time is not tracked or paid by Defendants.

148. Defendants have required that Plaintiffs must log out of their "ready and available" status for their unpaid meal break, each shift that they work.

149. Defendants require that Plaintiffs must also log out of their "ready and available" status within one minute of the end time of their scheduled shift and not earlier, unless they are engaged in a customer call at the end of their shift.

150. AT&T corporate policy and practice prohibits call center associates from hanging up on a customer if they are engaged in a call at the end time of their scheduled shift.

151. The CTI software logs every minute that call center associates are engaged in customer calls, regardless of whether those calls are performed within or outside of scheduled shift hours.

152. If a call center associate logs out of CTI before or after the scheduled start time of an unpaid meal break, the IEX system has an automated function in conjunction with CTI that adjusts the unpaid meal break time block in that call center associates' IEX schedule to reflect the actual meal break minutes spent not logged into CTI.

153. If a call center associate logs out of CTI after the scheduled end time of their shift, the IEX system does not automatically adjust that call center associate's IEX schedule to reflect the actual minutes the call center associate is logged into CTI past the end time of the scheduled shift.

154. The telephone calls taken by Plaintiffs are from live customers who typically express various questions and concerns about the customers' service, available equipment, upgrading or downgrading service, and similar matters. The length of customer calls typically range from five to thirty minutes.

155. Typically, Plaintiffs are engaged in customer calls past the end time of their scheduled shifts on a daily basis.

156. If they are not engaged with a customer call at the end time of their scheduled shift, Plaintiffs are required to log out from their "ready and available" status, within one minute of the end of their scheduled shift time.

157. Plaintiffs frequently perform work during their meal periods, including reviewing work-related information provided to them by Defendants, discussing work matters with managers and supervisors, reviewing call notes from previous call sessions, and performing follow up work from the prior call session(s).

158. Plaintiffs frequently perform work after logging out of CTI at the end of their scheduled work shift, including reviewing work-related information provided to them by Defendants, discussing work matters with managers and supervisors, reviewing call notes from previous call sessions, and performing follow up work from the prior call session(s).

159. If Plaintiffs wish to be compensated for the time they have worked beyond their scheduled shift time, they must then affirmatively send an email, fill out a piece of paper, or complete a text or instant message to a management group called the "Force Team," setting forth the amount of time they continued to work beyond their scheduled shift hours. This is called a request for "incidental overtime".

160. The request is submitted to an inbox that is reviewed by clerks on the Force Team.

161. Plaintiffs and the other employees are only paid for unscheduled incidental overtime beyond their scheduled shift if they complete and submit this request, even though Defendants have a: (i) contemporaneous electronic record of the actual time that Plaintiffs log out of their "ready and available" status, after their scheduled shift time; and (ii) Defendants have a contemporaneous electronic record of the actual time that Plaintiffs close their programs and log out or suspend their remote terminals.

162. Plaintiffs and the other employees have been required to request to be paid for all time worked beyond their scheduled shift, or else they were not paid for that time worked, throughout the Class Period.

### i. Defendants' Practice of Rounding Clocked Time

163. While working for Defendants during the Class Period, Plaintiffs would regularly arrive for work and begin performing compensable work before the start time of their scheduled shift.

164. While working for Defendants during the Class Period, Plaintiffs regularly performed compensable work after the end time of their scheduled shifts, including but not limited to: (i) finishing calls while logged into CTI; and (ii) performing follow up work after logging out of CTI but before logging out of, or suspending, their remote computer terminals.

165. While working for Defendants during the Class Period, Plaintiffs regularly performed compensable work during their meal periods.

166. The majority of all separate instances throughout the workday when call center associates actually perform compensable incidental overtime (pre-shift, post-shift CTI login, post-shift follow-up work/logout, and during meal breaks) are less than eight (8) minutes in duration.

167. During the Class Period, Defendants have maintained records of the actual time when Plaintiffs and putative collective members actually finished calls, when those calls occurred after the end times of their scheduled shifts.

168. Defendants did not use those records for calculating Plaintiffs' and members of the putative collective's compensation.

169. Instead, Defendants rounded the time from the actual time worked to the scheduled shift time, and the scheduled shift hours, not the actual hours, were then used to calculate and process payroll for Plaintiffs and members of the putative collective.

170. Separately, Defendants corporate policy and practice is for coaches and supervisors to instruct Plaintiffs, and putative members of the collective, to refrain from submitting incidental overtime requests in the amount of eight minutes or less. This rounding policy is facially inequitable, as it rounds away more hours worked than paid, to the detriment of Plaintiffs and members of the putative collective.

171. Separately, Defendants' payroll conversion software, TVI, rounded away all incidental overtime exceptions contained in the IEX schedules of the Plaintiffs and putative members of the collective that were eight minutes in duration or less, when converting IEX schedules and exceptions to eLink payroll data, for the purpose of payroll processing. This software conversion rounding policy is facially inequitable, as it rounds away more hours worked than paid, to the detriment of the Plaintiffs and the members of the putative collective.

172. Defendants had a facially inequitable rounding policy of rounding all incidental overtime worked prior to the start time of their scheduled shifts to zero. Therefore, Plaintiffs and putative members of the collective were regularly not paid for the additional overtime work performed prior to the start time of their scheduled shifts.

173. Defendants had a facially inequitable rounding policy of rounding all incidental overtime worked during meal breaks to zero. Therefore, Plaintiffs and putative members of the collective were regularly not paid for the additional overtime work performed prior to the start time of their scheduled shifts.

174. Plaintiff Wagner estimates that she often worked approximately a minimum of two or more hours per work week of unpaid overtime. Evidence in the form of records indicating some of the time that Plaintiffs have worked is in the exclusive possession and control of Defendants.

175. Defendants' practice of rounding and failing to pay for time worked pre-shift, during meal breaks and post-shift, but instead rounding the time for which it would compensate Plaintiffs to their scheduled shift hours, is wide-spread and has occurred for a significant period of time during the last three years.

176. The identity of the employees who worked prior to and after their scheduled shift times can be determined from the log out records themselves, which are required to be kept by the Defendants pursuant to 29 C.F.R. § 516 and the FLSA.

**COUNT I**
**VIOLATION OF THE FAIR LABOR STANDARDS ACT – OVERTIME WAGES**

**(Brought as a Collective Action by Plaintiff McKenzie and all named Plaintiffs Individually and on Behalf of All Others Similarly Situated)**

177. Plaintiffs re-allege and incorporate herein the allegations in the preceding paragraphs as if fully set forth in this Count.

178. Plaintiffs, Diane Calloway, Doretta Wagner, Carolyn Adams-Harris, Bridgett Tift, James Bloch, Mary Hanley, Audrey Michelle Otis, China Kellam and Sharon McKenzie bring this count as a collective action on behalf of herself and other similarly situated persons pursuant to 29 U.S.C. §216(b) to recover unpaid overtime wages, liquidated damages, attorneys' fees and costs, and other damages owed.

179. Plaintiffs and the putative members of the collective are hourly-paid, non-exempt, full-time employees whom Defendants employed at call centers during the Class Period and whose daily log- in and log-out time was rounded and/or unpaid as described above.

180. The proposed group of similarly situated persons is defined as:

> "All individuals who were and/or are currently employed by any of the Defendants, their subsidiaries, affiliates, predecessors and/or successors, as call center employees or other similarly titled positions at any time during the relevant statute of limitations, who were paid for at least forty hours in at least one week of the class period and whose actual log-in and/or log-out times were rounded by Defendants, to their detriment."

181. Defendants operated under a scheme and practice, as described above, to deprive Plaintiffs and the collective of overtime compensation and thereby increase Defendants' earnings and ultimately Defendants' profits.

182. Section 207(a)(1) of the FLSA requires that an employee must be paid overtime, equal to at least one and one-half times the employee's regular rate of pay, for all hours worked in excess of 40 hours per week.

183. Plaintiff and the putative collective members were not paid for all hours worked in excess of 40 in a week, in violation of the maximum hours provisions of the FLSA, 29 U.S.C. 207(a).

184. While working for Defendants, Plaintiff and members of the putative collective were subject to the control of Defendants and engaged in activities that were not undertaken for their own convenience, that were necessary for the performance of their duties for Defendants, and that were integral and indispensable to their principal activities. Despite

this, Plaintiffs and other members of the collective regularly were permitted or required to work "off the clock" that entitled them to compensation as set forth herein:

    a.    Defendants required and/or permitted Plaintiffs and the putative members of the collective to work off the clock prior to the beginning of the call-center employee's scheduled shift; and/or

    b.    Defendants required and/or permitted Plaintiffs and the putative members of the collective to work off the clock during their meal breaks; and/or

    c.    Defendants required and/or permitted Plaintiffs and the putative members of the collective to remain on duty on the premises or at a prescribed work site and engage in work related activities after they were logged-out and off the clock, in the interest of the employer.

185. Defendants' rounding practices violated the overtime provisions of the FLSA because Defendants did not pay the overtime wages for all work performed by Plaintiff and the similarly-situated employees.

186. Defendants' rounding practices as set forth herein violate the record-keeping requirements set forth in Section 29 U.S.C. § 211(c), and in 29 C.F.R. § 516.2(7)-(9).

187. At all times relevant hereto, the action of Defendants to not pay overtime or premium pay for all hours worked over 40 in a week and their failure to keep accurate payroll records was willful in that Defendants knew that the FLSA required them to pay one and one-half times the regular rate for all hours worked over 40 in a workweek and Defendants knew that the FLSA required them to maintain true and accurate records.

188. As a direct and proximate result thereof, Plaintiff and similarly situated call-center employees are due unpaid overtime and liquidated damages, pursuant to 29 U.S.C. § 216.

189. Plaintiffs request that the Court authorize notice to the putative members of the collective to inform them of the pendency of this action and their right to "opt-in" to this

lawsuit pursuant to 29 U.S.C. § 216(b), for the purpose of seeking unpaid overtime compensation, liquidated damages under the FLSA, and the other relief requested herein.

190. Plaintiffs estimate there are at least five hundred (500) individuals who are similarly situated as defined above. The precise number of collective members can be ascertained by using Defendants' payroll and personnel records.

WHEREFORE, Plaintiffs, Diane Calloway, Doretta Wagner, Carolyn Adams-Harris, Bridgett Tift, James Bloch, Mary Hanley, Audrey Michelle Otis, China Kellam, and Sharon McKenzie, individually and on behalf of the individuals who ultimately opt into this lawsuit pray for an Order of judgment against Defendants, jointly and severally, as follows:

A. Conditionally certify the collective defined in paragraph 177; and

B. Authorize notice at the earliest possible time informing the similarly situated call-center employees that this action has been filed, of the nature of the action, and of their right to opt-in to this lawsuit if they worked regular hours or overtime hours in excess of forty hours in a week during the liability period, by posting notice in call center breakrooms; by deskdrop; by sending electronic notice via email, text message and instant message; and by U.S. mail; and

C. Order the Defendants to furnish to counsel a list of all names and last known addresses of all non-exempt hourly-paid employees employed by any of Defendants who currently or previously worked for any of Defendants in the United States within three years of the filing of the original Complaint, whose time was rounded to their detriment, and whose claims are not barred by other claims against Defendants, who qualify as members of the collective; and

D. Declare and find that each of the Defendants committed one or more of the following acts:

  i. Violated overtime provisions of the FLSA by failing to pay overtime wages to Plaintiffs and similarly situated persons who opt-in to this action; and

  ii. Willfully violated the overtime provisions of the FLSA; and

  iii. Willfully violated the record keeping provisions of the FLSA; and

E.      Order as equitable relief that Defendants alter their compensation policies to pay their call center representative employees for all work performed hereafter; and

F.      Award compensatory damages, including all pay owed, in an amount according to proof; and

G.      Award liquidated damages on all compensation due accruing from the date such amounts were due; and

H.      Award all costs and reasonable attorneys' fees incurred in prosecuting this claim; and

I.      Award pre-judgment and post-judgment interest, if permitted; and

J.      Order such further relief as the Court deems just and equitable.


JURY DEMANDED ON THIS AND ALL COUNTS

Date: October 17, 2018

**Respectfully submitted,**

**Diane Calloway, Doretta Wagner, Carolyn Adams-Harris, Bridgett Tift, James Bloch, Mary Hanley, Audrey Michelle Otis, China Kellam, and Sharon McKenzie, Individually and on Behalf of All Others Similarly Situated.**

**BY:**

/s/Jeffrey Grant Brown
    Jeffrey Grant Brown

Jeffrey Grant Brown          Glen J. Dunn, Jr.
Jeffrey Grant Brown, P.C.      Glen J. Dunn & Associates, Ltd.
221 North LaSalle Street, Suite 1414   221 North LaSalle Street, Suite 1414
Chicago, IL 60601           Chicago, IL 60601
312.789.9700             312.546.5056
Jeff#JGBrownlaw.com       GDunn@GJDLaw.com