UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DIANE CALLOWAY, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | No. 18 C 06975 |
| | ) | |
| v. | ) | |
| | ) | Judge Edmond E. Chang |
| AT&T CORP., *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Telephone-call center employees brought this collective action against five AT&T entities, alleging that the employees were deprived of overtime wages in violation of the Fair Labor Standards Act (FLSA), 29 U.S.C. § 216(b). R. 1, Collective Action Compl.[1] The Defendants responded with a motion to dismiss, arguing (among other things) that this Court lacked personal jurisdiction over the various AT&T companies. R. 24, Defs.' Mot. Dismiss. The employees contend that they cannot respond to the Defendants' motion without at least some limited discovery on personal jurisdiction. So the Plaintiffs have filed a motion to stay briefing and to take limited jurisdictional discovery. R. 28, Pls.' Mot. Stay.

**I. Background**

For right now, the Court accepts as true the complaint's allegations relevant to personal jurisdiction and draws all reasonable inferences in the employees' favor.

---

[1]This Court has subject matter jurisdiction over the federal claims in this case under 28 U.S.C. § 1331. Citations to the record are noted as "R." followed by the docket number and the page or paragraph number.

1

*Central States, Se. & Sw. Area Pension Fund v. Phencorp Reinsurance Co., Inc.*, 440 F.3d 870, 878 (7th Cir. 2006).

The Plaintiffs have worked at telephone-call centers in several Midwest states, including Illinois, Michigan, and Ohio, since at least October 2015.[2] Collective Action Compl. ¶ 136. During the proposed collective-action period, these call centers were operated by four AT&T entities: AT&T Corp., AT&T, Inc., AT&T Teleholdings, Inc., and AT&T Services, Inc.[3] Not surprisingly for call-center employees, the Plaintiffs' main job duty was talking on the phone with customers about their AT&T services. *Id*. ¶ 141. The employees were usually scheduled to work at least 40 hours per week, and they had to take a daily 30-minute unpaid lunch break. *Id*. ¶ 142.

The employees' typical work day looks like this: they arrive before their scheduled shift and review any promotional or operational materials related to current customer offers, bonus structures, and system requirements. Collective Action Compl. ¶ 143. Then, the Plaintiffs log onto various computer programs that they need to use throughout the day, including two known as IEX and CTI. *Id*. ¶ 144. IEX generates the Plaintiffs' work shifts, and CTI logs the time that call-center

---

[2]The period of this proposed collective action is three years before October 17, 2018 (the date the complaint was filed) to the present. Collective Action Compl. ¶ 140.

[3]The Defendants do not dispute that the call centers were operated by these entities during the proposed collective-action period. But the Defendants contend that one of the named defendants, AT&T Operations, Inc., ceased to exist as a separate corporate entity well before the start of the period. In support of this, the Defendants have presented the Declaration of Thomas Koch, an Assistant Vice President of Accounting at AT&T Services, Inc., as well as the Certificate of Merger for AT&T Operations. According to those documents, AT&T Operations, Inc. merged into AT&T Services on December 31, 2011—around four years before the start of the class period. *See* R. 25-1, Koch Decl. ¶ 6; *id*., Exh. A, AT&T Operations Certificate of Merger. The Plaintiffs do not dispute this evidence. So from here on out, when the Court refers to the "Defendants," that designation excludes AT&T Operations, Inc. because they were not in existence during the relevant period.

employees are on customer calls. *Id*. ¶¶ 124, 151. These tasks can take several minutes to do. *Id*. ¶ 144. And Plaintiffs must complete them all *before* they clock in at the start of their scheduled shift, at which point they are expected to be ready and available to take customer calls. *Id*. ¶ 145.

When it is time for their lunch break, call-center workers are required to log out of every computer program and system, and then log back in when they return. Collective Action Compl. ¶ 148. At the end of their shift, the Plaintiffs must make sure to log out within one minute of their scheduled shift, unless they are in the middle of a customer call, as is often the case. *Id*. ¶¶ 149, 155. When logged out, whether it be during their lunch break or after the end of their shift, the employees often times continue to perform work related duties, including discussing work matters with managers and supervisors, reviewing call notes, and performing follow up work from prior call sessions. *Id*. ¶¶ 157-58.

Despite all that extra work, however, call-center representatives' payroll reflects only their scheduled shift hours, not the actual hours worked. Collective Action Compl. ¶¶ 163-69. This happens for two reasons. First, to be compensated for any time worked in addition to their scheduled shift hours, the Plaintiffs must send a request for overtime to a management group called the "Force Team." *Id*. ¶¶ 159-162. Without this request, workers are not compensated for their overtime. *Id*. But supervisors often instruct employees to not submit overtime requests that are eight minutes or less. *Id*. ¶ 170. Second, when it comes time to process payroll, the IEX system does not automatically adjust a call-center representative's IEX schedule to

reflect the actual time logged into CTI. *Id.* ¶ 153. The way payroll processing works is that the IEX schedules are converted into payroll data using software called (using yet another acronym) TVI. *Id.* ¶ 28-29. And TVI uses a "rounding" function in the conversion process that rounds down the hours worked. *Id.* ¶ 30. In the end, the Plaintiffs miss out on getting paid for most of the overtime hours they work pre-shift, during their lunch break, and post-shift. *Id.* ¶ 175.

On the whole, the Plaintiffs work less than eight minutes in overtime on a given day. Collective Action Compl. ¶ 166. But those eight minutes can add up. One of the plaintiffs, Doretta Wagner, for example, estimates that she worked about two or more hours of overtime per week. *Id.* ¶ 174. So the Plaintiffs brought this collective action, alleging that these pay practices violate the FLSA. The Defendants moved to dismiss the Complaint, arguing (among other things) that the Court lacks personal jurisdiction over all five defendants. Defs.' Mot. Dismiss. The employees then filed motion to stay, arguing that they are unable to respond to the jurisdictional arguments without some discovery. Pls.' Mot. Stay.

## II. Legal Standard

A complaint need not allege personal jurisdiction, but once a defendant moves to dismiss on that ground, the plaintiff bears the burden of establishing that jurisdiction is proper. *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003). Sometimes discovery limited to the personal-jurisdiction dispute is warranted: "it is within the discretion of the district court to allow a plaintiff to conduct limited discovery in order to establish that jurisdiction exists."

4

*Sanderson v. Spectrum Labs, Inc.*, 248 F.3d 1159, 2000 WL 1909678, at *3 (7th Cir. 2000). At the same time, however, the "plaintiff must establish a colorable or *prima facie* showing of personal jurisdiction before discovery should be permitted." *Central States*, 230 F.3d at 946. In other words, a plaintiff seeking jurisdictional discovery must advance "proof to a reasonable probability" of the facts necessary to establish federal jurisdiction. *Anthony v. Sec. Pac. Fin. Servs., Inc.*, 75 F.3d 311, 316 (7th Cir. 1996); *see also Indag GmbH & Co. v. IMA S.P.A*, 150 F. Supp. 3d 946, 971 (N.D. Ill. 2015).

Generally, courts grant jurisdictional discovery if the plaintiff can show that the factual record is at least ambiguous or unclear on the jurisdiction issue. *See e.g., Wells v. Hospital Group of Illinois, Inc.*, No. 02 C 6111, 2003 WL 21704416, at *3 (N.D.Ill. July 23, 2003); *Ticketreserve, Inc. v. viagogo, Inc.*, 656 F. Supp. 2d 775, 782–83 (N.D. Ill. 2009). The standard is not particularly onerous, but a plaintiff's request will be denied if it is based only upon unsupported assertions of personal jurisdiction. *See Central States*, 230 F.3d at 946 (citing *Andersen v. Sportmart, Inc.*, 179 F.R.D. 236, 242 (N.D.Ind.1998)).

### III. Analysis

There are two types of personal jurisdiction: general and specific. *uBID, Inc. v. GoDaddy Grp., Inc.*, 623 F.3d 421, 425 (7th Cir. 2010). The Plaintiffs do not explicitly say on which type of jurisdiction applies here, whereas the defense argues that neither does. The Court addresses each type in turn.

#### A. General Jurisdiction

A court may exercise general jurisdiction over a defendant only when its connections with the state are so "continuous and systematic" as to render it "essentially at home" in the forum state. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 317, (1945)). The Supreme Court recently has emphasized that general jurisdiction "should not lightly be found," because that would mean that the defendant can be sued for *any* case in the particular forum, no matter the specific case's lack of connection to the state. *Kipp v. Ski Enter. Corp. of Wis., Inc.*, 783 F.3d 695, 698 (7th Cir. 2015) (citing *Goodyear*, 564 U.S. at 919). So far, the Supreme Court has deemed a corporation at home only in the state (or states) of its incorporation and principal place of business. *Kipp*, 783 F.3d at 698 (citing *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014*)*). Outside of those states, general jurisdiction applies "only when the continuous corporate operations within a state are so substantial and of such a nature as to justify suit on causes of action arising from dealings entirely distinct from those activities." *Kipp*, 783 F.3d at 698 (quoting *Daimler*, 571 U.S. at 138) (cleaned up).[4] Outside the typical home state, that level of activity is rare indeed. How rare? In *Daimler*, the Supreme Court gave this example: a world war forces a foreign company to temporarily relocate its principal place of business to Ohio due to enemy activity abroad. *Daimler*, 571 U.S. at 129.

---

[4]This opinion uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. See Jack Metzler, Cleaning Up Quotations, 18 Journal of Appellate Practice and Process 143 (2017).

In light of that standard, it is obvious in this case that general jurisdiction does not apply to the Defendants here in Illinois. They are neither incorporated in Illinois nor have their principal place of business here.[5] And the extent of Defendants' operations in Illinois rise nowhere near the level needed to tag them as being at home in Illinois. No discovery is need on this type of personal jurisdiction

### B. Specific Jurisdiction

In contrast to general jurisdiction, specific jurisdiction "depends on an affiliation between the forum and the underlying controversy." *Goodyear*, 564 U.S. at 919 (cleaned up). Specific jurisdiction applies when a defendant has directed its activities at the forum state, and the cause of action relates to those activities. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985). The Seventh Circuit has held that "the contacts supporting specific jurisdiction can take many different forms." *uBID*, 623 F.3d at 426. What is essential is that the defendant's contacts be purposefully directed at the forum state. *Id.* (citing *Burger King*, 471 U.S. at 475). The requisite connection to the forum must arise from the defendant's conduct so that the defendant would anticipate being hauled into court there; personal jurisdiction cannot be based solely on the defendant's relationship to the plaintiff or the plaintiff's

---

[5]According to Defendants, AT&T Corp. is incorporated in New York and has its principal place of business in Bedminster, New Jersey. Koch Decl. ¶ 4. AT&T Inc. is incorporated in Delaware and has its principal place of business in Dallas, Texas. *Id*. ¶ 2. AT&T Teleholdings, Inc. is incorporated in Delaware and has its principal place of business in Dallas, Texas. *Id*. ¶ 8. AT&T Services, Inc. is incorporated in Delaware and has its principal place of business in Dallas, Texas. *Id*. ¶ 7. AT&T Operations, Inc. merged into AT&T Services, Inc. as of December 31, 2011. *Id*. ¶ 6. The Plaintiffs do not dispute any of this evidence.

unilateral activities. *Walden v. Fiore*, 571 U.S. 277, 284-85 (2014); *Felland v. Clifton*, 682 F.3d 665, 673 (7th Cir. 2012).

To make a *prima facie* showing of personal jurisdiction, a plaintiff must adequately allege three key elements: "(1) the defendant must have purposefully availed himself of the privilege of conducting business in the forum state or purposefully directed his activities at the state; (2) the alleged injury must have arisen from the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with traditional notions of fair play and substantial justice." *Felland*, 682 F.3d at 673 (citing *Burger King*, 471 U.S. at 472; *Int'l Shoe*, 326 U.S. at 316)) (cleaned up); *see also Tamburo v. Dworkin*, 601 F.3d 693, 702 (7th Cir. 2010); *John Crane, Inc. v. Shein Law Ctr., Ltd.*, 891 F.3d 692, 695-696 (7th Cir. 2018).

The heart of the dispute here is the second element.[6] Defendants argue that the Plaintiffs have not made a *prima facie* showing of specific jurisdiction because the complaint's allegations are unrelated to the alleged FLSA violation[7]: none of the Defendants employ or pay any of the Plaintiffs (or any of the other workers who have opted in) in Illinois. Defs.' Resp. Br. at 5-8. But the Plaintiffs contend that that is exactly why they need limited jurisdictional discovery—to determine whether the

---

[6]At this time, the defense has not disputed that the Plaintiffs have made a showing on the first and third requirements.

[7]At least with regard to some of the allegations, the Defendants are right. Engaging in retail, marketing, and advertising activities, or engaging in other general business activities, have no relation to the Defendants' alleged FLSA claim—those activities have nothing to do with the employment of call-center representatives much less the alleged failure to pay overtime wages. Nor does the filing of a separate FLSA lawsuit in this District (the *LaMarr* litigation) by other employees form the basis of specific jurisdiction.

8

Defendants' are employers of the Plaintiffs under the FLSA, and whether the Defendants' conduct relates to the alleged FLSA violation. Pls.' Reply Br. at 5-8.

The FLSA defines "employer" to include "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). It is well-settled that an employee can have more than one "employer" who is responsible for compliance with the FLSA. *Falk v. Brennan*, 414 U.S. 190, 195 (1973). In evaluating whether a company is an "employer" under the FLSA, courts avoid overly "formalistic labels or common law concepts of agency." *Goldberg v. Whitaker House Co-op., Inc.*, 366 U.S. 28, 33 (1961); *see also Hollins v. Regency Corp.*, 867 F.3d 830, 834 (7th Cir. 2017) (quoting *Nationwide Mutual Ins. Co. v. Darden*, 503 U.S. 318, 326 (1992)) ("The Supreme Court has added that we must construe the terms 'employee' and 'employer' expansively") (cleaned up). The Seventh Circuit has observed that someone may be treated as an FLSA employer where the "defendant had supervisory authority over the complaining employee and was responsible in whole or in part for the alleged violation." *Riordan v. Kempiners*, 831 F.2d 690, 694 (7th Cir. 1987).

Courts often use the "economic reality" test to determine whether a defendant is an employer under the FLSA. *Hollins*, 867 F.3d. at 835; *see also Pietrzycki v. Heights Tower Serv., Inc.*, 290 F. Supp. 3d 822, 850 (N.D. Ill. 2017) (citing *Perez v. Super Maid, LLC*, 55 F.Supp.3d 1065, 1075 (N.D. Ill. 2014)). This assessment looks at the totality of the circumstances of the parties' relationship, not formalistic labels. *Pietrzycki*, 290 F. Supp. 3d at 850 (quoting *Deschepper v. Midwest Wine & Spirits,*

*Inc.*, 84 F.Supp.3d 767, 778 (N.D. Ill. 2015) (outlining several factors of the economic realities test); *see also Nehmelman v. Penn Nat. Gaming, Inc.*, 790 F.Supp.2d 787, 795 (N.D. Ill. 2011)) (same). And the focus of the inquiry is whether the targeted party had control over the alleged FLSA violation, *not* whether the party controlled *every* aspect of the employee's workplace performance. *Jang v. Woo Lae Oak, Inc. Chicago*, No. 12-CV-00782, 2013 WL 6577027, at *2 (N.D. Ill. Dec. 12, 2013); *see also Shockley v. Stericycle, Inc.*, No. 13-CV-01711, 2013 WL 5325632, at *4 (N.D. Ill. Sept. 19, 2013); *Villareal v. El Chile, Inc.*, 776 F. Supp. 2d 778, 785 (N.D. Ill. 2011) (citing *Donovan v. Grim Hotel Co.*, 747 F.2d 966, 972 (5th Cir. 1984); *Dole v. Simpson*, 784 F.Supp. 538, 545 (S.D. Ind.1991)).

Here, at the very least, the Plaintiffs have raised a sufficient question on whether the Defendants controlled overtime wage payments. According to the Plaintiffs, the Defendants implemented a "Corporate Code of Conduct" that controlled and mandated call-center operations and working conditions, including those conditions related to work hours and wages. For example, the Plaintiffs allege that, under the Corporate Code of Conduct, the Defendants have the power to determine the rate and method of payment for call-center representatives, and established disciplinary procedures and job-termination criteria for all call-center representatives. Collective Action Compl. ¶¶ 19 (AT&T Corp.), 40 (AT&T Inc.), 70 (AT&T Teleholdings), 93 (AT&T Services). The Plaintiffs also allege that the companies implemented a nationwide training program for call-center managers, representatives, and Force Team members, and the program covered the day-to-day

10

execution of their job duties and responsibilities—which plausibly could include training on clocking in and out, as well as on reporting and requesting overtime hours. *Id.* ¶¶ 35 (AT&T Corp.), 57 (AT&T Inc.), 86 (AT&T Teleholdings), 109 (AT&T Services). The Defendants also allegedly created, maintain, and control the databases that contains call-center representatives' employment information, including their time stamps within the CTI system, and the payroll-processing programs that round down the number of hours worked. *Id.* ¶¶ 22-30 (AT&T Corp.), 44-52 (AT&T Inc.), 73-81 (AT&T Teleholdings), 96-104 (AT&T Services).

What's more, AT&T Teleholdings, AT&T Services, and AT&T Corp. are all signatories to a Collective Bargaining Agreement (CBA) between the companies and call-center representatives in several states, including Illinois. R. 28-5, Collective Bargaining Agreement. Although the details are not known, the CBA's Table of Contents says that, not surprisingly, the CBA addresses wages. *See* Collective Bargaining Agreement at 4. According to the Plaintiffs, under this agreement, those three Defendants have the power to determine the rate and method of payment for call-center employees. Collective Action Compl. ¶¶ 20 (AT&T Corp.), 71 (AT&T Teleholdings), 94 (AT&T Services).

To attack the Plaintiffs' showing, the Defendants generally contend that they do not employ[8] nor pay any of the Plaintiffs in Illinois. Defs.' Resp. Br. at 6. (citing R.

---

[8]In their discovery motion, the Plaintiffs predicted that the Defendants would assert that an AT&T subsidiary, Illinois Bell Telephone Company, which is also a signatory to the CBA, is the only employer of all the Plaintiffs in Illinois. Pls.'s Mot. Stay ¶ 11. But Defendants do not advance this contention, and simply assert that they are not the pertinent employers. In any event, as discussed earlier, under the FLSA an employee can have more than one

11

25-1, Koch Decl; R. 25-2, Koons Decl.).⁹ As a preliminary matter, though, whether the Defendants "employ" the Plaintiffs under the FLSA is a question of law. *Karr v. Strong Detective Agency, Inc.*, 787 F.2d 1205, 1206 (7th Cir.1985). So it is not enough for the Defendants to just *ipse dixit* say that they do not "employ" the Plaintiffs in Illinois. And even if the Defendants do not directly hire, fire, pay, supervise, direct, set the compensation for, or otherwise have direct dealings with the Plaintiffs, *see* Koons Decl. ¶ 3, still it is possible for the Defendants to wield control over overtime wage payments. Beyond their general conclusory assertions, the Defendants do not meaningfully engage with any of the Plaintiffs' specific allegations. So the Plaintiffs are entitled to limited discovery on the issue of specific jurisdiction.

Although some discovery is warranted, it is worth noting that jurisdictional discovery does not open-up wide-ranging discovery. *See Central States*, 230 F.3d at 947. The employees are only entitled to conduct limited jurisdictional discovery on the Defendants' level of control over the alleged unpaid wages. So the currently crafted interrogatory requests of the Plaintiffs are too broad and have nothing to do

---

employer. *See Moldenhauer v.Tazewell–Pekin Consol. Commc'ns Ctr.*, 536 F.3d 640, 644 (7th Cir. 2008).

Relatedly, the Plaintiffs allege that Illinois Bell Telephone Company is part of at least two agreements with the Defendants in this matter: (1) the CBA agreement (to which Illinois Bell is a signatory); and (2) an ownership agreement. Pls.' Mot. Stay ¶ 12. The Plaintiffs argue that these agreements are enough to warrant personal jurisdiction, *id.*, but the bare entry into agreements by itself is not enough to dispositively show specific jurisdiction without examining how the agreements relate to the alleged FLSA violation.

⁹It is worth noting that Koch's declaration generally presents bare legal conclusions without any factual support. *See* Koch Decl. (asserting that neither AT&T Inc., Corp., or Teleholdings are "involved in the day-to-day activities of any entities [that employ Plaintiffs] and does not exert control over the day-to-day activities, including employment-related activities of any of those entities").

with this issue. *See* R. 34-2, Exh. B, Discovery Requests at 5-7. Most of the Plaintiffs' document requests (as distinct from the interrogatories), however, are in fact relevant to specific jurisdiction. *See id*. at 2-5. Indeed, the Defendants have already agreed to produce records in response to most of those requests. *Id*. Naturally, not *every* Defendant is a custodian of the records sought pursuant to each request, so they need not all go digging for documents that do not pertain to them. Instead, each individual Defendant must only respond to those requests that specifically pertain to them, or for which they are the custodians.

On those principles, the Court grants in part and denies in part the Plaintiffs' document requests as follows:

| Plaintiffs' Requests | Defendants' Response | Decision |
|---|---|---|
| AT&T Corporate Code of Conduct and the policies and guidelines that support that Code, including without limitation the "Employee Conduct Guidelines," "AT&T Midwest/CWA District 4 Attendance Guidelines," "eLink AT&T Midwest Time Reporting Manual," "Reporting Time Worked Policy" effective Feb. 2010, Revised April 17, 2014 and Supervisor Field Manuals for the last three years. | Defendants would be willing to agree voluntarily to produce the named documents. | The custodial Defendants shall produce the named documents as they have agreed to do. |
| CBA for the Midwest region (including information relating to the most recent | Defendants would be willing to agree voluntarily to produce the | Those Defendants that are signatories to the CBA (AT&T Teleholdings, AT&T |

13

| | | |
|---|---|---|
| bargaining cycle, like, for instance, who conducted those negotiations from what department at the corporate defendants' business units and their authority to do so). | current CBA for the Midwest region. | Services, and AT&T Corp.) shall produce the current CBA for the Midwest region as they have agreed to do. |
| All documents in which any of the Defendants have directed control over Illinois Bell Telephone Company, including without limitation, corporate resolutions, board of directors meeting minutes, corporate parent directives, financial reporting, employee wage reporting, advertising and promotions, service guidelines. | Defendants do not believe that documents reflecting ownership and typical corporate governance of a non- party are relevant to the current issues of personal jurisdiction and therefore will not agree voluntarily to produce these documents. | With the exception of "employee wage reporting," this request is irrelevant to the identified specific-jurisdiction issues. The custodial Defendants shall produce, however, any documents relevant to their control over Illinois Bell Telephone Company as it relates to wage-payment practices. |
| TVI process Overview and TVI Midwest Business Rules, TVI Rules for Importing from IEX | Defendants would be willing to agree voluntarily to produce these documents. | The custodial Defendants shall produce the named documents as they have agreed to do. |
| elink payroll software operating manual | Defendants would be willing to agree voluntarily to produce these documents. | The custodial Defendants shall produce the named documents as they have agreed to do. |
| AT&T Management Compensation Plan | Defendants do not believe that documents addressing management compensation are relevant to the current issues of personal jurisdiction and therefore will not agree voluntarily to produce this document. | The Court agrees with Defendants—these documents are irrelevant to the specific-jurisdiction issues identified. |
| Rule 30(b)(6) Dep transcripts and exhibits | Large portions of these deposition transcripts | The Court agrees, at least partially, with |

| | | |
|---|---|---|
| of Jason Bunch, Jodie Garcia and Kathy Messman from LaMarr v. AT&T Corp., et al | and exhibits have no connection with the pending question of personal jurisdiction in this case. Accordingly, Defendants requested that Plaintiffs identify those portions of the testimony and specific exhibits from this previous litigation that they seek to rely on in connection with the current question of personal jurisdiction, and Defendants indicated they would likely be willing to agree to an accommodation to make some or all such material available in this case subject to adequate protections for those portions subject to protective order in the previous case. Plaintiffs declined to narrow their request. Relatedly, we discussed Defendants' view that relying on corporate representative testimony from a previous case while simultaneously seeking similar corporate representative testimony in the current case was unnecessarily duplicative but that Defendants might be willing to agree to a broad resolution regarding | Defendants—not all of the requested transcripts are relevant to the specific-jurisdiction issues identified. But without the transcripts, there is no way for the Plaintiffs to identify which portions are relevant ahead of production. So the custodial Defendants must identify in good faith and produce those portions relevant to the specific-jurisdiction issues identified.<br><br>Though the Court does not anticipate it being necessary, if the Plaintiffs still need more information to answer Defendants' personal jurisdiction arguments after reviewing the relevant portions of the Rule 30(b)(6) deposition transcripts, then the Plaintiffs shall identify narrowly tailored Rule 30(b)(6) topics. Until then, live corporate representative testimony is not required. |

| | the requested prior depositions and exhibits if Plaintiffs' would agree to forego additional suggested corporate representative deposition(s) on jurisdiction here. Conversely, Defendants do not believe Plaintiffs have a need for previous corporate representative testimony on issues related to personal jurisdiction if they will insisting on taking new jurisdiction-focused Rule 30(b)(6) depositions in this case. Plaintiffs likewise declined these suggestions. | |
|---|---|---|

## IV. Conclusion

For the reasons discussed above, the Court grants the Plaintiffs' motion for discovery in part and denies it in part. The document production that is required as discussed above is due by October 28, 2019. The Plaintiffs also may serve, at any time, more targeted interrogatories. The status hearing of October 25, 2019 is reset to November 1, 2019, at 9:45 a.m., to discuss the remainder of the discovery schedule.

The motion [24] to dismiss is denied without prejudice, subject to renewal after the discovery is concluded.

ENTERED:

      s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: September 26, 2019