UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DIANE CALLOWAY, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | No. 18 C 06975 |
| | ) | |
| v. | ) | |
| | ) | Judge Edmond E. Chang |
| AT&T CORP., *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Telephone-call center employees have brought this proposed collective action against five AT&T entities: AT&T Corp.; AT&T, Inc.; AT&T Teleholdings, Inc.; AT&T Services, Inc.; and AT&T Operations, Inc. (referred to collectively as "AT&T"[1] for convenience's sake). The employees allege that they were deprived of overtime wages in violation of the Fair Labor Standards Act (FLSA), 29 U.S.C. § 216(b). R. 1, Collective Action Compl.[2] AT&T responded with a motion to dismiss, arguing (among other things) that this Court lacked personal jurisdiction over the defendants. R. 24, Defs.' Mot. Dismiss. The Court eventually terminated that motion without prejudice to allow for limited jurisdictional discovery. R. 68. Pending now is Plaintiffs' motion for equitable tolling, requesting that the statute of limitations for putative collective-

---

[1]As noted in a prior order, AT&T Operations, Inc. was not in existence during the proposed collective-action period. *See Calloway v. AT&T Corp.*, 2019 WL 4694724, at *1 n.3 (N.D. Ill. Sept. 26, 2019). So when the Court refers to "AT&T," that designation actually excludes AT&T Operations, Inc.

[2]This Court has subject matter jurisdiction over the federal claims in this case under 28 U.S.C. § 1331. Citations to the record are noted as "R." followed by the docket number and the page or paragraph number.

1

action members be tolled from December 19, 2018 (the filing date of the Plaintiffs' motion, R. 28, to stay the briefing on AT&T's motion to dismiss) going forward until the date that the Court decides the jurisdictional issue. R. 54, Mot. Equitable Tolling. For the reasons stated below, the Court denies the motion for *en masse* equitable tolling, but does so without prejudice to individual employees later arguing that their specific circumstances justify tolling.

## I. Procedural Background

In considering this motion, the Court assumes familiarity with the underlying facts described more fully in the order that granted in part and denied in part Plaintiffs' stay motion. *See Calloway v. AT&T Corp.*, 2019 WL 4694724, at *6 (N.D. Ill. Sept. 26, 2019). But it is worth recapping the procedural background as it pertains to the motion for equitable tolling. Plaintiffs filed the collective-action complaint against AT&T on October 17, 2018. Collective Action Compl. Nine employees were named as plaintiffs in the complaint, *id.* ¶ 1, with another 38 opt-in employees as of the date of the complaint's filing.[3] Pls.' Mot. Stay ¶ 2. AT&T moved to dismiss on November 26, 2018, arguing (among other things) that this Court lacked personal jurisdiction over the various AT&T companies. Defs.' Mot. Dismiss. AT&T also moved to defer the deadlines established by the Mandatory Initial Discovery Pilot Project.

---

[3]The collective-action complaint indicates that "378 [ ] employees" consented to this action as of the date the complaint was filed. *See* Collective Action Compl. ¶ 1. Plaintiffs' motion for equitable tolling on the other hand, indicates that "*thirty-eight* additional Plaintiffs have filed their consent to participate in this action." Pls.' Mot. Stay ¶ 2. The Court assumes that the "378" number was a typo and that 38 employees have opted-in.

2

R. 21. On November 29, 2018, the Court stayed AT&T's answer deadline and also stayed the Mandatory Initial Discovery disclosures deadline. R. 27.

In response to the motion to dismiss, on December 19, 2018, Plaintiffs sought leave to conduct limited discovery on the issue of personal jurisdiction. Pls.' Mot. Stay. Since the filing of that motion, 11 more employees have opted in to this action. R. 60, Def.'s Resp. Br. ¶ 5. Then, while the parties were briefing the motion to stay, Plaintiffs filed a motion to apply equitable tolling to the statute of limitations as to future collective members. Mot. Equitable Tolling. Specifically, Plaintiffs argue that equitable tolling should apply starting from December 19, 2018 (the filing date of Plaintiffs' stay motion), through the eventual date that the Court decides the jurisdictional issue.[4] *Id.* The parties have briefed their positions on this issue. *See* Defs.' Resp. Br.; R. 61, Pls.' Reply Br.

A little over nine months after it was filed, the Court granted in part and denied in part the Plaintiffs' motion to stay, allowing for limited discovery on the issue of personal jurisdiction. *Calloway*, 2019 WL 4694724, at *6. The Court also denied without prejudice AT&T's motion to dismiss, subject to renewal after the jurisdictional discovery concludes. *Id.* at *8. The parties are currently still in the midst of jurisdictional discovery. *See* R. 75.

---

[4]Plaintiffs filed their motion for equitable tolling before the Court granted limited jurisdictional discovery and dismissed without prejudice AT&T's motion to dismiss, subject to renewal after the discovery is concluded. So of course, Plaintiffs' request now assumes that AT&T will renew their motion to dismiss after discovery ends.

3

## II. Analysis

## A. Equitable Tolling

The doctrine of equitable tolling "creates a defense to statute of limitations and other nonjurisdictional filing deadlines for cases in which, despite due diligence, the plaintiff cannot sue within the statutory deadline." *Sparre v. United States Dep't of Labor, Admin. Review Bd.*, 924 F.3d 398, 402 (7th Cir. 2019). Equitable tolling applies only if (1) the plaintiff has diligently pursued the plaintiff's rights; and (2) some extraordinary circumstance nevertheless prevented timely filing. *Mayberry v. Dittmann*, 904 F.3d 525, 529 (7th Cir. 2018) (citing *Holland v. Florida*, 560 U.S. 631, 649 (2010)), *cert. denied*, 139 S. Ct. 1202 (2019). To satisfy the second requirement, the circumstances causing the litigant's delay must be "both extraordinary *and* beyond its control." *Id.* (quoting *Menominee Indian Tribe of Wis. v. United States*, 136 S. Ct. 750, 756 (2016)) (emphasis in original). "[F]ailure to show either element will disqualify him from eligibility for tolling." *Id.*

Equitable tolling is an "extraordinary remedy that is rarely granted." *Carpenter v. Douma*, 840 F.3d 867, 870 (7th Cir. 2016) (cleaned up)[5]; *Obriecht v. Foster*, 727 F.3d 744, 748 (7th Cir. 2013) (quoting *Simms v. Acevedo*, 595 F.3d 774, 781 (7th Cir.2010)); *see also Wallace v. Kato*, 549 U.S. 384, 396 (2007) ("Equitable tolling is a rare remedy to be applied in unusual circumstances, not a cure-all for an entirely common state of affairs."); *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96

---

[5]This opinion uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, *Cleaning Up Quotations*, 18 Journal of Appellate Practice and Process 143 (2017).

4

(1990) ("Federal courts have typically extended equitable [tolling] relief only sparingly."). But by the same token, the bar is not set so high as to make equitable tolling impossible. *See Socha v. Boughton*, 763 F.3d 674, 684 (7th Cir. 2014). Instead, its applicability is highly dependent on the facts and "courts are expected to employ flexible standards on a case-by-case basis." *Id.*; *see also Holland*, 560 U.S. at 650-52.

"In most cases in which equitable tolling is invoked, the statute of limitations has run before the plaintiff obtained information essential to deciding whether he had a claim." *Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 453 (7th Cir. 1990). The Seventh Circuit has concluded, for example, that the failure to post the notice required by the Age Discrimination in Employment Act of 1967 would provide a sufficient basis for tolling the statute of limitations on age-discrimination claims. *Kephart v. Inst. of Gas Tech.*, 581 F.2d 1287, 1289 (7th Cir. 1978). *Kephart* reasoned that "Congress imposed [the notice] requirement on employers to insure[*sic*] that protected employees would be fully informed of their rights under the ADEA" and that "this end would not be realized if employers were free to breach the posting requirement without penalty." *Id.* In a similar vein, courts in this district have concluded that the failure to post the required notice under the FLSA might justify the equitable tolling of the statute of limitations. *See, e.g., Pizano v. Big Top Party Rentals, LLC*, 2018 WL 2193245, at *5 (N.D. Ill. May 14, 2018) (denying request for equitable tolling on other grounds but noting that "an employer's failure to comply with the notice requirements of 29 C.F.R. § 516.4 could serve as a basis for equitably tolling the statute of limitations on the claims of potential plaintiffs."); *Young Chul*

5

*Kim v. Capital Dental Tech. Lab., Inc.*, 279 F. Supp. 3d 765, 772 (N.D. Ill. 2017) (denying summary judgment motion on statute of limitation grounds where parties disputed whether the employer posted the required notice, which could justify tolling the statute of limitations); *Chavez v. Don Stoltzner Mason Contractor, Inc.*, 2010 WL 1417029, at *5 (N.D. Ill. Apr. 5, 2010) (denying motion to dismiss on statute of limitations ground where the employees alleged that the employer failed to pose the required FLSA notice).

**B. Analysis**

The FLSA allows employees who are "similarly situated" to pursue their claims in a collective action. 29 U.S.C. § 216(b). An FLSA action must "be commenced within two years after the cause of action accrued," unless the violation was willful, in which case the statute of limitations is three years. 29 U.S.C. § 255(a). An FLSA lawsuit is considered "commenced" at different times depending on whether the employee is a named "party plaintiff" or is instead an opt-in:

> on the date when the complaint is filed; except that in the case of a collective or class action … it shall be considered to be commenced in the case of any individual claimant—(a) on the date when the complaint is filed, if he is specifically named as a party plaintiff in the complaint and his written consent to become a party plaintiff is filed on such date in the court in which the action is brought; or (b) *if such written consent was not so filed or if his name did not so appear—on the subsequent date on which such written consent is filed in the court in which the action was commenced.*

29 U.S.C. § 256 (emphasis added). So even though the named Plaintiffs brought this collective action on behalf of all others similarly situated, the statute of limitations for these putative class members will continue to run until those employees actually opt in (that is, give their consent in writing to become parties in this action, per 29

6

U.S.C. § 216(b)). *See Espenscheid v. DirectSat USA, LLC*, 705 F.3d 770, 771–72 (7th Cir. 2013). It is true that conditional certification (sometimes known as "Step One" notice) generally allows notice to be sent to potential class members, but they "become parties ... only by filing written consent with the court." *Genesis Healthcare Corp. v. Symczyk*, 133 S. Ct. 1523, 1530 (2013) ((citing § 216(b)).

According to the Plaintiffs, this case's allegedly unique procedural posture presents an extraordinary circumstance that warrants equitable tolling of the statute of limitations. Specifically, the Plaintiffs contend that AT&T's motion to dismiss, and the resultant stay on merits discovery has created significant delays in the Plaintiffs' ability to file a motion for conditional certification. Mot. Equitable Tolling ¶¶ 7-11; Pls.' Reply Br. at 1-2. In the Plaintiffs' view, it is unfair for the potential opt-in employees to be prejudiced by the delay in getting to conditional certification.

Neither the Seventh Circuit, nor any other court of appeals (so far as the parties or this Court have been able to identify) have addressed whether the delay inherent in the presentation and consideration of a motion for conditional certification of a collective action warrants equitable tolling of the FLSA's statute of limitations. But at least two courts in this District have held that a delay of that sort is *not* an extraordinary circumstance and is instead "the predictable and common consequence of crowded court dockets generally." *Soto v. Wings 'R US Romeoville, Inc.*, 2016 WL 4701444, at *10 (N.D. Ill. Sept. 8, 2016); *Sylvester v. Wintrust Fin. Corp.*, 2014 WL 10416989, at *2 (N.D. Ill. Sept. 26, 2014). Those cases have reasoned that "clearly *some* period of time must be considered normal, rather than

7

extraordinary, for a court to address a conditional certification motion." *Id*. (emphasis in original). This Court agrees. "To hold otherwise would be to opine that equitable tolling should be granted in every Section 216(b) case as a matter of course during the pendency of a conditional class certification request, thereby transforming this extraordinary remedy into a routine, automatic one." *Id*.

It is true that this case is arguably in a different procedural stance than *Soto* and *Sylvester*. In those cases, the conditional certification motion was already fully briefed and the parties were waiting for the courts to issue a decision. In contrast, here, the Plaintiffs have not even had the chance to file a conditional certification motion because the parties are litigating the personal-jurisdiction dispute, which naturally has and will delay the filing of the conditional certification motion.

At least one other court in this District has held that equitable tolling is warranted where, as here, the procedural history of a case causes delays in the filing of a conditional certification motion. *See Pfefferkorn v. PrimeSource Health Grp., LLC*, 2019 WL 354968, at *8 (N.D. Ill. Jan. 29, 2019). In *Pfefferkorn*, the district court denied the employees' first conditional certification motion without prejudice as premature and instructed the employees that the court would not rule on any conditional certification request until the final pleadings were on file. *Id*. The defendants then filed a motion to dismiss, and like here, the parties fully briefed that motion. *Id*. Almost eight months later, the judge ruled on the motion to dismiss, and three months after that, the plaintiffs refiled their conditional certification motion. *Id*. The plaintiffs later requested that the district court equitably toll the running of

8

the statute of limitations as of the date that the plaintiffs filed their first motion for conditional certification. *Id*. The court decided to apply equitable tolling "given the procedural history of [the] case and the fact that the statute of limitations continues to run for opt-in plaintiffs." *Id*. But *Pfefferkorn* did not mention or discuss the two-element equitable-tolling standard applied in this Circuit. So the Court declines to follow *Pfefferkorn*.

The part of the equitable-tolling standard where the Plaintiffs' argument clearly comes up short is the requirement that the opt-ins were prevented from joining the lawsuit *because of* the delay in filing the conditional certification motion. No decision on conditional certification is needed to permit the filing of another lawsuit or another opt-in notice in this suit. Neither have the potential opt-ins been deprived of any information essential to deciding whether they have a claim. A delay in ruling on conditional certification is unlike, for example, a defendant's failure to comply with the notice requirements of 29 C.F.R. § 516.4, which might prevent employees from even knowing that a violation occurred. *See, e.g.*, *Pizano*, 2018 WL 2193245, at *5.

The Plaintiffs argue that, without conditional certification, potential plaintiffs might not know about this case. *See* Mot. Equitable Tolling at ¶ ¶6-12; Pls.' Reply Br. at 2. Indeed, one purpose of conditional certification is to formally authorize the Plaintiffs to send notice about this case to potential plaintiffs. *See Ervin v. OS Rest. Servs., Inc.*, 632 F.3d 971, 974 (7th Cir. 2011) ("The conditional approval process is a mechanism used by district courts to establish whether potential plaintiffs in the

9

FLSA collective action should be sent a notice of their eligibility to participate and given the opportunity to opt in to the collective action."). In support of this argument, Plaintiffs rely on three district court cases from outside of this Circuit. *See* Mot. Equitable Tolling (citing *McGlone v. Contract Callers, Inc.*, 867 F. Supp. 2d 438, 445 (S.D.N.Y. 2012); *Stickle v. SCIWestern Mkt. Support Ctr., L.P.*, 2008 WL 4446539, at *22 (D. Ariz. Sept. 30, 2008); *Israel Antonio-Morales v. Bimbo's Best Produce, Inc.*, 2009 WL 1591172, at *2 (E.D. La. Apr. 20, 2009)). But none of those cases applied the two-element equitable-tolling standard applied in this Circuit, nor grappled with the pertinent statutory text (as discussed below), so the Court disagrees with the across-the-board application of tolling in those cases.[6] In any event, the cases Plaintiffs rely on are not binding on this Court. Indeed, the record in this case established that 38 employees filed opt-in consent notices by the time that the Plaintiffs filed their motion to stay, Pls.' Mot. Stay ¶ 2, and eleven more have filed since then, Defs.' Resp. ¶ 5. Those opt-ins undermine the argument that the delay is preventing others from joining the lawsuit. Either way, the question is not whether delay in issuing notice prevented potential plaintiffs from learning about this *particular* lawsuit, but whether the delay is preventing them from discovering their *own* claims. Ultimately, there is no reason to think that the absence of a conditional certification decision has prevented other potential plaintiffs from discovering and asserting their rights here.

---

[6]*See McGlone*, 867 F. Supp. 2d at 445 (reasoning that "the delay caused by the time required for a court to rule on a motion" is an extraordinary circumstance that warrants equitable tolling); *Stickle*, 2008 WL 4446539, at *22 (reasoning that the inherent benefits of the collective action will disappear if potential plaintiffs are not notified of the suit before the statute of limitations expire and that plaintiffs lost time with the dismissal-motion briefing); *Israel*, 2009 WL 1591172, at *2 (reasoning that "[p]otential opt-ins stand to forfeit their claims through no fault of their own during the pendency of the stay").

10

At least one court in this District has criticized this line of reasoning, declaring that it "ignores the realities of FLSA claims" and "would go against ever applying equitable tolling to a potential opt-in." *See Bergman v. Kindred Healthcare, Inc.*, 949 F. Supp. 2d 852, 861 (N.D. Ill. 2013). It is not clear exactly what are the "realities of FLSA claims," but even if the Court assumes that other potential plaintiffs are often unaware of the alleged FLSA violations, that "is a reality borne out of the plain language of the statute." *Soto,* 2016 WL 4701444, at *11. "Congress plainly did not view the filing of a putative collective action to be an adequate reason to stop the clock on claims of other putative members of the collective, instead providing expressly that their cases shall be considered to be commenced on the date on which their own written consent is filed." *Sylvester*, 2014 WL 10416989, at *3 (cleaned up). Put another way, the statutory text in § 256(b) refutes the idea that, as a general matter, equitable tolling applies in every FLSA case. *See id.* ("Issuing a blanket order tolling the limitations period for all putative members of a collective until such time as they have been given notice of the collective action would effectively overturn Congress's view that the statute should run as to such individuals until they have filed an opt-in consent.").

What is more, the delay of which the Plaintiffs complain is not totally "beyond [their] control." *Mayberry*, 139 S. Ct. at 203. The named Plaintiffs say that the delay is all AT&T's fault. But it was the Plaintiffs who decided to file their collective action in the Northern District of Illinois in the first place. If they had instead filed this case in each AT&T company's home district, then this personal-jurisdiction dance could

11

have been avoided altogether. Yes, the Plaintiffs believe that personal jurisdiction applies here, but AT&T too has a right to dispute personal jurisdiction. So the named Plaintiffs cannot now invoke the personal-jurisdiction battle as a special reason for equitable tolling when they could have mooted the issue by filing in different districts. Perhaps when opt-in plaintiffs actually raise the issue later in the litigation (if personal jurisdiction applies here), specific plaintiffs will be able to describe specific circumstances that warrant equitable tolling. But the current motion must be denied (though without prejudice).

Indeed, it is worth noting that, on the diligence requirement, the relevant question will be whether the *later*-filing plaintiffs were diligent in pursuing their claims. All of this depends on arguments not yet presented by plaintiffs who have not yet opted-in. Not surprisingly, some courts have held that any decision on equitable tolling as it applies to putative plaintiffs would amount to an advisory opinion. *See Davis v. Vanguard Home Care, LLC*, 2016 WL 7049069, at *1 (N.D. Ill. Dec. 5, 2016*); Soto*, 2016 WL 4701444, at *11–12; *Miller-Basinger v. Magnolia Health Sys., Inc.*, 2016 WL 773191, at *2 (S.D. Ind. Feb. 22, 2016); *see also United States v. Cook*, 795 F.2d 987, 994 (Fed. Cir. 1986) (vacating the district court's order for equitable tolling because it "affected no right of any party to the suit."). The Court agrees: it is not possible to decide whether equitable tolling applies to plaintiffs not yet in the case.

## III. Conclusion

For the reasons discussed above, the Plaintiffs' motion to apply equitable tolling to the statute of limitations is denied. The denial is without prejudice, however, to any individual opt-in plaintiff moving later to apply equitable tolling.

ENTERED:

　　　s/Edmond E. Chang　　
Honorable Edmond E. Chang
United States District Judge

DATE: December 27, 2019