UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DIANE CALLOWAY et al., | ) | |
| | ) | |
| Plaintiffs, | ) | No. 1:18-CV-06975 |
| | ) | |
| v. | ) | |
| | ) | Judge Edmond E. Chang |
| AT&T SERVICES, INC. | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Diane Calloway, along with six other named Plaintiffs and 65 opt-in Plaintiffs, brought this proposed collective-action lawsuit against AT&T Services, Inc., alleging violations of the Fair Labor Standards Act.[1] According to the Plaintiffs, AT&T did not pay call-center customer service representatives for overtime, in violation of the Act (which is commonly referred to as the FLSA). R. 1, Compl.[2] Following jurisdictional and some merits discovery, the Plaintiffs have now filed a motion for Stage One conditional certification of a proposed collective and for court-supervised notice under the FLSA, 29 U.S.C. § 216(b). R. 149, Mot. Cond. Cert. For the reasons discussed below, the conditional certification motion is denied, but without prejudice to moving

---

[1]The Court has subject matter jurisdiction under 28 U.S.C. § 1331. The Plaintiffs originally brought suit against five AT&T entities, four of whom were dismissed after jurisdictional discovery, when the parties stipulated to the Court's personal jurisdiction over solely AT&T Services, Inc. R. 83, 85.

[2]Citations to the record are noted as "R." followed by the docket number and the page or paragraph number.

for certification of a more narrowly defined collective. The motion for court-supervised notice is denied as moot.

## I. Background

AT&T operates 110 call centers nationwide, employing 9,823 call center representatives. R. 149-2, Mot. Cond. Cert., Exh. A, Def.'s Resp. to Interrog. at 4, 6; R. 154, Def.'s Resp. at 3. The named and opt-in Plaintiffs in this case include 54 current and former employees from Midwest region call centers in Illinois, Wisconsin, Michigan, and Ohio, and 16 current and former employees from Southwest region call centers in Texas and Missouri. R. 150, Pls.' Br. at 5–6; R. 149-5, Mot. Cond. Cert., Exh. D, Pls.' Decls.[3] The Plaintiffs also support their motion for conditional certification with declarations from 28 former and current employees from Southwest region Texas call centers prepared for parallel litigation in the Northern District of Texas. *Id*. The Plaintiffs seek conditional certification of a collective that would include notice to all 9,823 call center representatives in all 110 call centers. Mot. Cond. Cert. ¶¶ 1, 3.

Call center representatives are hourly workers, whose main responsibility is to answer incoming calls from AT&T customers. *See, e.g.*, Mot. Cond. Cert., Exh. D, Aparicio Decl. ¶¶ 3–5. Representatives are assigned to scheduled shifts, called "tours," during which representatives must answer calls from customers. *See, e.g.*, *id.*

---

[3] The total number of named Plaintiffs and opt-ins do not exactly match the number of employees when broken down into regions, but the difference (the numbers are off by two) is not important for purposes of deciding this motion. Also, there does not appear to be an exhibit that definitively sets forth all of the States in all of the regions, but the combination of the briefs and exhibits lead to the description in the text.

¶ 3. The average customer call time is around 10 to 12 minutes. R. 149-9, Mot. Cond. Cert., Exh. H, Keys Dep. at 192:22–23. Not surprisingly, representatives are not allowed to just hang up on customers if a call extends past the end of a scheduled tour. *See, e.g.*, R. 149-11, Mot. Cond. Cert., Exh. J, Barbour Dep. at 116:4–117:2; R. 149-10, Mot. Cond. Cert., Exh. I, Negrey Dep. at 76:8–77:1; R. 149-12, Mot. Cond. Cert., Exh. K, Allen Dep. at 75:13–76:2; R. 149-13, Mot. Cond. Cert., Exh. L, Stewart Dep. at 37:2–24. As a result, call center representatives are sometimes "caught on call" and required to continue working past their scheduled tours, and thus work overtime in weeks during which they work more than 40 hours. *Id; see also, e.g.*, Mot. Cond. Cert., Exh. D, Aparicio Decl. ¶¶ 6–7.

AT&T uses various software programs to schedule, track, and facilitate representatives' work. CTI is the program that connects representatives to the nationwide customer call queue. R. 149-3, Mot. Cond. Cert., Exh. B, Patton Dep. at 45:8–21. Representatives log in to this software to receive calls; the representatives log out at the end of their scheduled tours or when they are doing non-call work. *Id.*; R. 154-2, Def.'s Resp., Exh. E, Calloway Dep. at 177:14–178:12. IEX is the program that displays representatives' predetermined daily schedules, including the start and end times of tours, any scheduled meetings, and unpaid lunch breaks. Patton Dep. at 44:23–45:2; R. 149-7, Mot. Cond. Cert., Exh. F, Bunch Dep. at 117:9–14. AT&T's "Force Team" is responsible for making the IEX schedules and inputting "exception time" when employees work hours that are different than those scheduled in IEX. Bunch Dep. at 118:9–21, 248:17–249:5. Lastly, AT&T generates Adherence Reports to evaluate

3

representatives' compliance with their scheduled tours. Barbour Dep. at 93:9–18; Patton Dep. at 54:9–20; R. 149-18, Mot. Cond. Cert., Exh. Q. These reports compare the representatives' IEX schedules with the representatives' actual call log in and log out times from the CTI program. Mot. Cond. Cert., Exh. Q.

According to the Plaintiffs, call center representatives are only paid for their scheduled tours, unless representatives or their supervisors report additional time worked to the Force Team. Mot. Cond. Cert. ¶¶ 10, 13. The Plaintiffs allege that AT&T knows when representatives have worked beyond scheduled tours—even in the absence of employee reporting—because of the call log-in and log-out data recorded by CTI and downloaded into IEX. *Id.* ¶¶ 27, 34. The Plaintiffs further allege that AT&T's overtime reporting and payment procedures for call center representatives are the same nationwide. *Id.* ¶¶ 27, 34. As discussed below, however, discovery shows that AT&T's procedures for tracking and paying time worked beyond scheduled tours vary throughout geographical regions and call centers.

## II. Analysis

Employees may "bring their FLSA claims through a 'collective action' on behalf of themselves and other 'similarly situated' employees." *Alvarez v. City of Chicago*, 605 F.3d 445, 448 (7th Cir. 2010) (citing 29 U.S.C. § 216(b)). District courts have broad discretion to manage FLSA collective actions, *id.* at 449, but they "generally proceed under a two-step process." *Nicks v. Koch Meat Co.*, 265 F. Supp. 3d 841, 848

4

(N.D. Ill. 2017) (cleaned up).[4] In the first step (sometimes called Stage One), called conditional certification, employees must make a "modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law." *Gomez v. PNC Bank, Nat'l Ass'n*, 306 F.R.D. 156, 173 (N.D. Ill. 2014) (cleaned up). Upon this showing, "courts may conditionally certify the case as a collective action and allow the plaintiffs to send notice of the case to similarly situated employees who may then opt in as plaintiffs." *Nicks*, 265 F. Supp. 3d at 849.

Conditional certification is "not automatic and is not a mere formality." *Hannah v. Huntington Nat'l Bank*, 2020 WL 2571898, at *6 (N.D. Ill. May 21, 2020) (cleaned up). The employee-plaintiffs must show "an identifiable factual nexus that binds the plaintiffs together as victims of a particular violation." *Nicks*, 265 F. Supp. 3d at 849 (cleaned up). This means that plaintiffs "must provide some evidence in the form of affidavits, declarations, deposition testimony, or other documents to support the allegations that other similarly situated employees were subjected to a common policy that violated the law." *Pieksma v. Bridgeview Bank Mortg. Co.*, 2016 WL 7409909, at *1 (N.D. Ill. Dec. 22, 2016) (cleaned up).

In evaluating the first step, district courts do not "make merits determinations, weigh evidence, determine credibility, or specifically consider opposing evidence

---

[4]This opinion uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, *Cleaning Up Quotations*, 18 Journal of Appellate Practice and Process 143 (2017).

presented by a defendant" on the merits of the underlying claims. *Bergman v. Kindred Healthcare, Inc.*, 949 F. Supp. 2d 852, 855–56 (N.D. Ill. 2013). But the governing legal principles do affect the conditional certification decision. For example, whether employees are subject to a common policy that violates the law for purposes of certification may depend on what the FLSA requires of employers for tracking and paying overtime. Still, step one only requires a "low standard of proof." *Id.* at 855.

### A. Applicable Standard

As a threshold matter, AT&T asks the Court to apply heightened "intermediate scrutiny" when reviewing the Plaintiffs' conditional-certification motion, instead of the usual and more lenient "modest factual showing" standard. R. 154, Def.'s Resp. at 14–15. In support, AT&T argues that the parties' 14 depositions and production of over 75,000 pages of documents justify the modest-plus standard adopted by other district courts in some cases. Def.'s Resp. at 15 (citing *Hunter v. WirelessPCS Chi. LLC*, 2022 WL 864533, at *4 (N.D. Ill. March 23, 2022); *Bunyan v. Spectrum Brands, Inc.*, 2008 WL 2959932, at *4 (S.D. Ill. July 31, 2008); *Steger v. Life Time Fitness, Inc.*, 2016 WL 245899, at *2 (N.D. Ill. Jan. 21, 2016); *Hawkins v. Alorica, Inc.*, 287 F.R.D. 431, 439 (S.D. Ind. 2012)).

But there is no need to formally introduce, in the two-step collective certification process, yet another tier of scrutiny for cases in which a certain number of depositions have been taken or pages of discovery have been produced. Having said that, the Court will evaluate the Plaintiffs' motion for conditional certification, and

6

whether the motion makes the requisite modest factual showing, in light of all of the available discovery in this case.

In its supplemental briefing, AT&T asks in the alternative to abandon the two-step approach to FLSA collective certification, following the Sixth Circuit's decision in *Clark v. A&L Homecare & Training Center, LLC*, 68 F.4th 1003 (6th Cir. 2023). R. 171, Def.'s Notice Supp. Auth. at 1. Courts in this district have generally used the two-step approach to determine whether to facilitate notice of an FLSA lawsuit to similarly situated employees, and the Seventh Circuit continues to allow it. *Bigger v. Facebook, Inc.*, 947 F.3d 1043, 1049 n.5 (7th Cir. 2020) (acknowledging district courts' practice of using a two-step approach and declining to require or prohibit it); *In re New Albertsons, Inc.*, USCA No. 21-2577, 2021 WL 4028428, at *1 (7th Cir. Sept. 1, 2021) (denying mandamus petition for review of district court's use of two-step conditional certification process, citing its "regular[] use[] in the Northern District of Illinois and other courts"). As the lower courts await Supreme Court instruction on FLSA collective certification, the Court will continue to apply the two-step framework in this case, considering whether the Plaintiffs have made a modest factual showing.

### B. Conditional Certification

Under that standard, the Plaintiffs have not made the requisite showing that the proposed plaintiffs are "similarly situated" for purposes of conditional certification. The Plaintiffs seek to conditionally certify an FLSA collective action comprising the following members:

7

> All individuals who were and/or are currently employed by Defendants, their subsidiaries, affiliates, predecessors and/or successors, as non-exempt call center employees or other similarly titled positions at any time during the relevant statute of limitations who were paid for at least forty hours in at least one workweek and whose actual time worked was rounded to their detriment.

Mot. Cond. Cert. ¶ 36. The Plaintiffs allege that AT&T required, on a nationwide basis, call center representatives to work overtime when answering customer calls that lasted beyond their scheduled shifts, but only paid overtime when employees self-reported their overtime hours worked, even though AT&T knew about the overtime worked, in violation of the FLSA. *Id.* ¶¶ 27, 34. The crux of the Plaintiffs' failure to make the requisite showing comes from the lack of evidence that AT&T had a *nationwide* policy or procedure for reporting and paying overtime that applied to call center representatives in all call centers and regions.

Under the Fair Labor Standards Act, employees—unless they are subject to an exemption—are entitled to receive overtime pay at a rate of 1½ times their regular hourly rate for all hours worked above the standard 40-hour workweek. 29 U.S.C. §§ 207, 213. Employers must "pay for all [overtime] work they know about." *Allen v. City of Chicago*, 865 F.3d 936, 938 (7th Cir. 2017). An employer's knowledge of overtime can be actual or constructive. *Id.* An employer's knowledge is constructive "if it should have acquired knowledge of that work through reasonable diligence." *Id.*

The Seventh Circuit has held that an employer may exercise reasonable diligence "by establishing a reasonable process for an employee to report uncompensated work time." *Allen*, 865 F.3d at 938. "But an employer's formal policy or process for

8

reporting overtime will not protect the employer if the employer prevents or discourages accurate reporting in practice." *Id.* at 939. Even if an employee fails to use the employer's reporting procedures, an employer may still be liable to pay overtime if it otherwise knows about the overtime worked. *Id.* at 943 (declining to establish a "blanket rule" that "all an employer ever needs to do is establish a reasonable process for reporting overtime"). Contemporaneous records of employees' work may, but will not always, suggest that an employer has constructive knowledge of overtime worked. *See, e.g.*, *id.* at 942–43 (affirming the district court's finding that employees' call and email records from BlackBerry phones did not establish the employer's constructive knowledge of hours worked); *see also Perry v. City of New York*, 78 F.4th 502, 514–16, 523 (2d Cir. 2023) (affirming district court's determination that employer had knowledge of overtime worked, in part because of electronic records, even when employees failed to self-report overtime).

It is true that the Plaintiffs have shown that AT&T prohibits—nationwide—call center representatives from hanging up on customers when their scheduled tours end. *See, e.g.*, Barbour Dep. at 116:4–117:2; Negrey Dep. at 76:8–77:1; Allen Dep. at 75:13–76:2; Stewart Dep. at 37:2–24. AT&T knows and expects that representatives will be caught on call post-shift and thus must work overtime in some circumstances. AT&T has a "Code of Business Conduct" that applies nationwide and includes mandatory payment of overtime worked for non-exempt employees. R. 149-4, Mot. Cond. Cert., Exh. C; R. 149-23, Mot. Cond. Cert., Exh. V.

9

So, yes, call center representatives cannot hang up on customers, even at the end of a scheduled tour. But the discovery conducted thus far also shows that AT&T has established a reporting system in most call centers to track representatives' overtime worked, including for being caught on call. The depositions of call center representatives and managers further suggest that AT&T's reporting system for overtime is *not* the same between call centers, even within a geographical region, let alone nationwide.

In many call centers, representatives must self-report overtime—using various means—to be paid for it. For example, Doretta Wagner, a call center representative in Chicago, stated that representatives were supposed to report overtime using a physical form, and could also report it verbally to Force Team clerks. R. 154-2, Def.'s Resp., Exh. G, Wagner Dep. at 63:2–64:15, 210:5–211:15. Jaime Stewart stated that when she was a technical associate on the Force Team in Chicago, she logged employees' overtime daily on IEX using overtime sheets submitted by employees, without reviewing their call log activities in CTI. Stewart Dep. at 19:15–23:7. Jeremy Negrey, a call center manager in Brecksville, Ohio, stated that call center representatives could report any overtime worked under 15 minutes, and the Force Team would enter this time. Negrey Dep. at 31:19–33:14. Representatives could report overtime by saying "hey" in person at the call center, sending an instant message on "Cue" (AT&T's messaging platform), or sending an email to a manager. *Id.* For overtime over 15 minutes, managers had to approve the time first before the Force Team entered it. *Id.* Sekeena Barbour stated that when she was a manager (referred to as "coach") at

a Detroit call center, representatives self-reported overtime by submitting an "exceptions sheet" or telling her verbally for her to enter it on their behalf. Barbour Dep. at 110:2–13, 112:24–113:4. When Carolyn Adams-Harris was a representative in Brecksville, Ohio, she self-reported overtime using a computer system named RDS, but only if she worked eight minutes or more past a scheduled shift. R. 154-2, Def.'s Resp., Exh. A, Adams-Harris Dep. at 272:11–273:25. James Bloch, who was also a representative in Brecksville, Ohio, stated that representatives self-reported overtime to their managers via text message or instant messenger. R. 154-2, Def.'s Resp., Exh. F, Bloch Dep. at 96:9–22. Diane Calloway, a call center representative in Detroit, self-reported overtime by emailing a manager or using instant messenger. Calloway Dep. at 107:17–108:7. Audrey Otis, who also worked as a call center representative in Detroit, self-reported overtime using a physical form, a scratchpad, or by speaking to a coach. R. 154-2, Exh. D, Otis Dep. at 39:15–43:10. Sherri Breternitz-Prebay, a call center manager in Saginaw, Michigan stated that representatives self-reported overtime under 15 minutes on a computer system called RDS, and managers reported representatives' overtime over 15 minutes once representatives self-reported it by "yell[ing] over," via instant message, or via email. R. 149-16, Mot. Cond. Cert., Exh. O, Breternitz-Prebay Dep. at 68:23–76:6.

Other call centers use a combination of representative self-reporting and manager-initiated reporting of overtime. Victoria Allen, a sales manager for the Dayton, Ohio and Rock Island, Illinois call centers, stated that representatives self-report overtime using the program "My Work Life," but IEX also automatically "pick[s] up"

time worked past scheduled shifts that employees fail to report. Allen Dep. at 42:17–44:6. When Carolyn Adams-Harris worked as a representative in Cleveland, Ohio, the policy changed during her time there: first, representatives filled out a physical form to be signed by a supervisor and then delivered to the Force Team; later, representatives could self-report overtime if they worked for more than eight minutes past a shift and clerical staff would also report overtime on behalf of representatives "from time to time." Adams-Harris Dep. at 84:8–85:14.

Still, other centers automatically track representatives' overtime without any reporting. In the Southeast region, when call center representatives are "caught on a call" their time is automatically paid as overtime using the representatives' CTI call log out information. Patton Dep. at 55:20–56:8, 87:15–88:10. Amica Tubbs stated that when she was a representative and then coach in Southfield, Michigan, overtime was reported for representatives by the Force Team, and there was no self-reporting, though she did not know on what basis the Force Team calculated her overtime worked. R. 149-14, Mot. Cond. Cert., Exh. M., Tubbs Dep. at 32:14–33:19.

Finally, some call centers use a "Kronos" timekeeping system. Def.'s Resp. to Interrog. at 5–6. In these centers, AT&T policy is that representatives are paid according to their daily clock-in and clock-out times, not according to their scheduled tours. *Id.* AT&T lists 12 centers in Montana, Oklahoma, Colorado, Minnesota, Alabama, Idaho, Illinois, and West Virginia that use this system and do not require any self-reporting for representatives' overtime. *Id.* Jaime Stewart, who is currently an attendance manager in the Grace Street Chicago call center, explained that

12

representatives' overtime is tracked and paid using the Kronos MyTime software program, which records a punch-in and punch-out time when representatives log in and out of the software. Stewart Dep. at 29:23–30:24. China Kellam stated that when she worked as a call center representative in Fayetteville, she could not take calls until she logged in using Kronos MyTime. R. 154-2, Def.'s Resp., Exh. B, Kellam Dep. at 80:22–83:1. But Kellam does not know whether her pay stubs reflected "automatic paying of overtime based on … clocking out" on Kronos. *Id.* at 80:14–21.

Beyond the variations in tracking and reporting overtime, discovery also shows that some call centers use a "trade time" policy for overtime. In the Southwest Region, if representatives work past scheduled tours for less than 10 minutes, they are required to "trade[] out" the time on another day "in the same week" by working a shorter shift. R. 154-2, Def.'s Resp., Exh. H at 8–9. In these call centers, time worked beyond 10 minutes is treated and paid as normal overtime. *Id.*

Based on this variety of policies, the Plaintiffs have not made a modest factual showing that AT&T has a common overtime policy *nationwide* that all proposed plaintiffs are subject to. Whether AT&T has violated the FLSA's overtime requirements will turn in part on whether it exercised "reasonable diligence" in acquiring knowledge of the overtime worked by representatives, including through its use of overtime reporting systems. *See Allen*, 865 F.3d at 938. Assessing the reasonableness of AT&T's overtime reporting policies will require different inquiries for call centers that mandated self-reporting, supplemented self-reporting with manager reporting, used no self-reporting, or used clock-in and clock-out timekeeping. Because discovery

13

thus far shows that AT&T's overtime reporting and payment policies varied extensively between call centers and regions, there is no "identifiable factual nexus that binds the plaintiffs together as victims of a particular violation" for call center representatives nationwide. *See Nicks*, 265 F. Supp. at 849.

The Plaintiffs further allege that AT&T's overtime policy violates the FLSA because AT&T has knowledge of call center representatives' overtime worked through CTI call log-in and log-out data, irrespective of AT&T's reporting policy. Mot. Cond. Cert. ¶ 27. At this stage, the Plaintiffs have not made a modest factual showing that representatives are similarly situated when it comes to AT&T's knowledge of their overtime worked on the sole basis of CTI records. The CTI data included in Adherence Reports show when a representative logged in or out of the calling system, not whether a representative was actively on a call. Patton Dep. at 58:15–60:25. Information about representatives' on-call status is only available to Force Team members monitoring representatives in "real time" while representatives are working. Patton Dep. at 45:22–47:9. Representatives log out of the CTI software at the end of a work shift, but they also sometimes log out to do non-call work associated with their jobs—though not always. Calloway Dep. at 177:14–178:12; Patton Dep. at 58:15–60:15. It may be that AT&T's diverse policies for tracking and reporting overtime are unreasonable given the existence of CTI data, but that inquiry will turn on overtime policies that vary from region to region and, sometimes, from center to center. *See Allen*, 865 F.3d at 943.

14

### C. Additional Discovery Guidance

Even if the Plaintiffs had made a modest factual showing that AT&T had a uniform overtime reporting policy nationwide, there would still be insufficient evidence to conditionally certify the Plaintiffs' requested nationwide collective. Some call centers would reasonably be excluded from the collective in absence of more evidence. For call centers in the West Region, the Plaintiffs do not offer any declarations or depositions about AT&T's overtime reporting requirements. In response to questions about overtime in California and the West Region, Jane Patton—a Force Team manager—simply testified, "I don't know." Patton Dep. at 131:10–133:2. For call centers in the Southeast Region, the Plaintiffs themselves acknowledge that AT&T automatically pays representatives for overtime using CTI data without requiring self-reporting, meaning that those representatives are not similarly situated. Mot. Cond. Cert. ¶ 22. The call centers using Kronos timekeeping (which do not appear to belong to a particular geographical region) would also reasonably be excluded from the collective in absence of further evidence that representatives are not paid overtime based on that timekeeping. Finally, the call centers using trade-time policies pursuant to Collective Bargaining Agreements may likewise be reasonably excluded. The Court highlights these questions to guide the parties in any further discovery and any future motion for conditional collective certification.

### III. Conclusion

The Plaintiffs' motion for conditional collective certification is denied, but without prejudice to moving for certification of a collective that is narrower than the

15

Plaintiffs' currently proposed collective. The parties shall confer and then file a status report, on or before April 8, 2024, proposing the next steps of the litigation.

ENTERED:

s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: March 28, 2024