**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| DIANE CALLOWAY, et al., | |
| Plaintiffs, | |
| v. | Civil Action No. 18-cv-06975 |
| AT&T SERVICES, INC., | Honorable Sunil R. Harjani |
| Defendant. | |

**DEFENDANT'S RESPONSE TO RENEWED MOTION FOR CONDITIONAL
CERTIFICATION AND FOR COURT-SUPERVISED NOTICE TO ISSUE**

## I.     INTRODUCTION

Plaintiffs' renewed motion to certify a nationwide collective fails to address the barriers the Court previously found preclude such certification. Rather, it urges the Court to reach a different result on the same factual record, same arguments, and same law. But in the absence of any proof—or even suggestion—of manifest errors of law or newly discovered evidence, there is no basis for the Court to second-guess its ruling. And even if Plaintiffs could meet the procedural threshold applicable to their *de facto* motion for reconsideration, they have presented no compelling reason for the Court to reverse itself. The Court properly denied Plaintiffs' motion the first time on its merits, and the same outcome is warranted here.[1]

In its Opinion denying certification, the Court correctly held that "Plaintiffs have not made a modest factual showing that AT&T has a common overtime policy *nationwide* that all proposed plaintiffs are subject to." Mem Op. (Dkt. 181) at 13. Judge Chang left the door open for Plaintiffs

---

[1] Rather than repeating background and resubmitting evidence already before the Court, AT&T incorporates by reference its previous Response to Plaintiffs' Motion for Conditional Certification (Dkt. 154), including the accompanying appendix and exhibits.

to try again if they could identify a *different*, narrower collective that shared sufficient commonality to permit certification. *Id.* at 15–16. But this was not simply an invitation to renew the same arguments. The Court in fact specifically identified shortcomings that Plaintiffs would need to address: the lack of a common policy, the need to exclude certain groups of individuals, and the need to further examine others. *Id.* at 15.

Plaintiffs have "reluctantly" narrowed their proposed collective slightly (Mot. (Dkt. 187) at 4), but they otherwise double down on their prior arguments on the theory that Judge Chang "misapprehended" them in rejecting certification. *Id.* at 2. Specifically, Plaintiffs grudgingly remove from their proposed collective call center representatives located in AT&T's Southeast region and those who work or worked at call centers that used Kronos timekeeping—groups of employees for whom Judge Chang found the only evidence in the record reflects employees are *paid* any overtime due based on their particular local practices. *Id.* at 4; Mem Op. (Dkt. 181) at 15. Otherwise, Plaintiffs made only minor edits to their proposed collective definition and then elaborated on their underlying theory without substantively changing it:

> All individuals who were and/or are currently employed by ~~Defendants~~Defendant, their subsidiaries, affiliates, predecessors and/or successors, as non-exempt call center employees or other similarly titled positions at any time during the relevant statute of limitations who ~~were paid for at least forty hours~~have worked unreported post-shift overtime minutes, recorded by CTI, but not entered as exceptions to their IEX schedules, and not paid in at least one FLSA qualifying forty-hour workweek~~and whose actual time worked was rounded to their detriment~~.

*Compare* Original Mem. (Dkt. 150) at 2, *with* P. Mem. (Dkt. 188) at 1.

The Court did not "misapprehend[] the policy Plaintiffs were attacking" in their original motion (Mot. (Dkt. 187) at 5)—there, as here, Plaintiffs' claim is that AT&T failed to pay for unscheduled time worked that employees failed to report through various available time-reporting methods, but that Plaintiffs contended might be inferred from other, non-timekeeping sources at

AT&T such as its CTI call routing system. *Compare* Mot. (Dkt. 187) at 5 ("the policy we were attacking was elink's ignoring all unreported post-shift minutes that were never entered as an exception to the scheduled shift hours"), *with* Original Mot. (Dkt. 149) at 7 (claiming that AT&T "requires every Call Center Associate to separately and affirmatively report, with pen, email, or using an online program, time they work beyond their schedules to be paid for that work"). Plaintiffs' theory remains the same, and they are no closer to identifying a common "policy." Failure to pay for unreported post-shift minutes that theoretically might have been inferred from a non-payroll/non-timekeeping system is not a *policy*—it is the *outcome* of differing instances when plaintiffs failed to abide by AT&T's varying, local timekeeping procedures. AT&T's express and unequivocal *policy* is to pay call center employees for all time worked and for employees to accurately report all such time consistent with the timekeeping methods at their location. *See infra* § II.B.2. As the Court previously recognized, the question whether "AT&T's diverse policies for tracking and reporting overtime are unreasonable given the existence of CTI data" is one that "will turn on overtime policies that vary from region to region and, sometimes, from center to center" and is thus not appropriate for collective resolution. Mem Op. (Dkt. 181) at 14. As such, certification was improper then and remains improper now. Nothing in Plaintiffs' renewed motion changes—or even addresses—that fundamental fact.

## II. ARGUMENTS[2]

### A. Plaintiffs' Renewed Motion for Conditional Certification Is an Improper Motion for Reconsideration.

Regardless of how it may be styled, Plaintiffs' motion amounts to an improper motion for

---

[2] Defendants' previous briefing recites the relevant factual background and procedural history. *See* D. Resp. Mem. (Dkt. 154) at 3–13.

reconsideration: it seeks virtually the same relief from the Court that Plaintiffs sought previously, on the same evidentiary record, under the same legal theory.[3] Plaintiffs' core claim was—and is—that some, but not all, AT&T call centers relied on employees to report time they worked to the extent it deviated from their scheduled shift through methods that varied from location to location, and certain employees failed at times to report those deviations. Through their "renewed" motion, Plaintiffs simply urge this Court to reach a different answer to the same question—whether a collective can be certified across groups of call center employees who worked under different policies regarding how additional time worked should be reported. That is a motion for reconsideration in substance if not in name.[4]

Motions for reconsideration are "generally disfavored." *Gerba v. Nat'l Hellenic Museum*, 351 F. Supp. 3d 1097, 1098 (N.D. Ill. 2018). Such motions "serve a limited function: to correct manifest errors of law or fact or to present newly discovered evidence"; accordingly, reconsideration is an extraordinary remedy reserved for the exceptional case. *Foster v. DeLuca*, 545 F.3d 582, 584 (7th Cir. 2008); *Steger v. Life Time Fitness, Inc.*, 2016 WL 6647922, at *1 (N.D. Ill. Nov. 10, 2016) (citing *Caisse Nationale de Credit Agricole v. CBI Indus., Inc.*, 90 F.3d 1264, 1269 (7th Cir. 1996)). "A 'manifest error' is not demonstrated by the disappointment of the losing party. It is the 'wholesale disregard, misapplication, or failure to recognize controlling precedent.'" *Brant v. Schneider Nat'l Inc.*, 2024 WL 218416, at *1 (E.D. Wis. Jan. 19, 2024) (citing *Oto v. Metro. Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000)).

---

[3] Plaintiffs' minor adjustments in class scope do not change what they contend is the common question—the same question the Court previously found insufficient for certification.

[4] Under the "law of the case doctrine," the Seventh Circuit has found that there is a "presumption against reopening matters already decided" even when a case is "reassigned from one judge to another." *See Minch v. City of Chi.*, 486 F.3d 294, 301 (7th Cir. 2007). This doctrine "reflects the rightful expectation of litigants that a change of judges midway through a case will not mean going back to square one." *Id.* (quoting *Mendenhall v. Mueller Streamline Co.*, 419 F.3d 686, 691 (7th Cir. 2005)).

1.      **Plaintiffs Have Not Identified Any Manifest Errors of Law.**

Far from identifying any manifest error or change in the law, Plaintiffs cite only three cases in their motion, all of which were available when they submitted their initial motion to the Court but were not included at the time.  None has any relevance to the present motion, much less addresses the deficiencies Judge Chang identified in Plaintiffs' previous motion.  Specifically, none of these cases indicates how the members of the proposed collective are similarly situated or how claims on their behalf stem from a common AT&T practice or policy.

In *DeKeyser v. Thyssenkrupp Waupaca, Inc.*, (P. Mem. (Dkt. 188) at 3), unlike here, the question before the court was a common one of the *compensability* of time spent showering and changing clothes before and after shifts for safety reasons.  860 F.3d 918, 921 (7th Cir. 2017).  Employees "produce[d] common evidence" that their employer "d[idn't] even record" that time, due to its view that the time was non-compensable.  *Id.* at 921–22.  Here, AT&T has not categorically treated certain types of work as non-compensable such that answering that question would determine the claims of all potential collective members.  Rather, AT&T expressly directs employees to report *all* time worked, and it has adopted a wide array of measures  across different locations for the specific purpose of capturing such time, each of which is tailored to local practices, office layouts, customs, and collective bargaining obligations.  For the same reason, Plaintiffs' second case, *Williams v. Cargill Meat Sols. Corp.*—which considers whether employees' time spent "donning, doffing, and cleaning" personal protective equipment was compensable, 2010 WL 2643405, at *1 (E.D. Wis. June 30, 2010)—has no bearing here.

Perhaps unsurprisingly, given their lack of relevance, Plaintiffs invoke *DeKeyser* and *Williams* only for peripheral issues in those cases that are inapposite to the present motion.  Plaintiffs seem to cite *DeKeyser* only to note that the amount of time litigation has been pending does not require denial of a conditional certification motion ("[t]his matter has similarly suffered

from several long periods of inactivity while the Court cleared its congested docket"), which is an issue neither considered in Judge Chang's Order nor urged by AT&T. *See* P. Mem. (Dkt. 188) at 3–4. And they invoke *Williams* as support for their request that this Court, if inclined to deny their motion, instead "redefine[] and modif[y] (by further narrowing) the proposed class definition" until the Court is satisfied with the class's scope. *Id.* at 5. But Judge Chang already gave Plaintiffs ample guidance on the deficiencies of their original certification motion, which Plaintiffs have chosen not to heed. Because *DeKeyser* and *Williams* do not speak to the issues at the heart of Plaintiffs' certification motion, they certainly cannot show any "manifest errors of law." *See Steger*, 2016 WL 6647922, at *1.

Finally, Plaintiffs cite *Krupp v. Impact Acquisitions LLC*, in which the court granted conditional certification because "defendants had a common policy with respect to [digital service technicians] working without compensation for unpaid meal periods and engaging in required training outside of regular business hours." 2016 WL 7190562, *6 (E.D. Wis. Dec. 12, 2016). Plaintiffs again gloss over significant dissimilarities that render this case inapposite. First, the putative class members in *Krupp* were subject to a common policy of "working without compensation." *Id.* at *6. Importantly, that policy was reflected in defendants having no formal mechanism or procedure for their technicians to report working overtime or through meal periods, and technicians "were not aware of any procedure that would allow them to be paid for . . . training hours." *Id.* at *2–3. In fact, in stark contrast to the array of methods implemented by AT&T for call center workers to report their time, when the named plaintiff in *Krupp* directly told her manager that she was training after hours, "he did not take any steps to ensure that she would be compensated for that training." *Id.* at *6. The plaintiff in *Krupp* thus "made a sufficient factual showing that the defendants did not provide any formal mechanism" to report additional time

worked, which presented a common issue permitting certification. *Id.* at *5.

Unlike in *Krupp*, here Plaintiffs have identified no common policy that applies nationwide to employees regarding reporting of unscheduled work (other than the reductionist notion that AT&T does not pay employees for time that is never entered through any of the various available methods into its payroll system). And, unlike in *Krupp*, each AT&T call center had its own set of simple procedures for capturing overtime, which employees knew about. *See infra* §§ II.B. Unlike the plaintiffs in *Krupp*, Plaintiffs here are not claiming that call center managers failed to act with respect to time worked that was properly reported to them. Because the court in *Krupp*, unlike here, found there was a common policy in that regard, the case has no bearing on certification under these facts and certainly does not demonstrate a "manifest error[] of law" in Judge Chang's opinion that would warrant reconsideration.[5] *See Steger*, 2016 WL 6647922, at *1.

### 2. Plaintiffs Have Not Identified Any Newly Discovered Evidence.

Plaintiffs originally moved for conditional certification over two years ago, and their renewed motion does not point to any newly discovered or changed facts since that motion. Nor have Plaintiffs made any effort to fill the evidentiary gaps in their previous motion. As just one example, Judge Chang noted in his ruling that, "[f]or call centers in the West Region, the Plaintiffs do not offer any declarations or depositions about AT&T's overtime reporting requirements." Mem. Op. (Dkt. 181) at 15. Plaintiffs' renewed motion again lacks even a single declaration or other piece of evidence specific to time-reporting practices in AT&T's West region, therefore

---

[5]  Plaintiffs also devote half a page to comparing the software programs used for recording shifts and payroll in *Krupp* and this case, but that focus is misplaced. P. Mem. (Dkt. 188) at 4. The *Krupp* court did not consider any system-related capabilities or impute to the defendants any knowledge of overtime based on those systems when granting conditional class certification. Instead, it granted certification based on plaintiffs' showing that the putative collective action members were subject to a common policy and thus similarly situated. *Krupp*, 2016 WL 7190562, at *5–6.

making it impossible to find that Plaintiffs can include that region in their proposed collective.

Without any newly discovered evidence or any showing of manifest errors of law, and by relying on the same theory and factual record as their prior, rejected motion, Plaintiffs' simple attempt to re-urge that motion falls flat. It shows neither grounds to reanalyze the same question already answered by Judge Chang nor a reason to stray from his conclusions. The Court rightly denied certification once already, and Plaintiffs provide no reason to reconsider that denial.

**B.     Plaintiffs Continue to Fail in Their Attempt to Establish an Appropriate Proposed Collective under the Fair Labor Standards Act.**

Even if Plaintiffs did not face the high procedural bar for reconsideration of the Court's prior ruling, their renewed motion fails for the same reasons as the previous one. Section 16(b) of the Fair Labor Standards Act ("FLSA") allows for a collective action "against any employer . . . by any one or more employees for and in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). To establish the essential element of being "similarly situated," Plaintiffs must show "an identifiable factual nexus that binds the plaintiffs together as victims of a particular violation," which means that they "'must provide some evidence in the form of affidavits, declarations, deposition testimony, or other documents to support the allegations that other similarly situated employees were subjected to a ***common policy*** that violated the law.'" *Nicks v. Koch Meat Co.*, 265 F. Supp. 3d 841, 849 (N.D. Ill. 2017) (emphasis added) (quoting *Pieksma v. Bridgeview Bank Mortg. Co.*, 2016 WL 7409909, at *1 (N.D. Ill. Dec. 22, 2016)).

**1.     The Court Should Apply Heightened Scrutiny to Assess Whether Potential Class Members Are "Similarly Situated."**

District courts in this circuit have applied a heightened "intermediate" scrutiny to motions for collective certification where, as here, "substantial discovery" has already been conducted in the case. *See Bunyan v. Spectrum Brands, Inc.*, 2008 WL 2959932, at *3–4 (S.D. Ill. July 31, 2008); *Hunter v. WirelessPCS Chi. LLC*, 2022 WL 864533, at *4 & n.3 (N.D. Ill. Mar. 23, 2022).

And a growing number of courts has held the FLSA provides no statutory basis for a more lenient, "conditional certification" step at all. *See* D. Supp. Authority (Dkt. 171) (citing *Clark v. A&L Homecare & Training Ctr., LLC*, 68 F.4th 1003 (6th Cir. 2023); *Swales v. KLLM Transp. Servs., L.L.C.*, 985 F.3d 430 (5th Cir. 2021)). But even under a lenient standard requiring just a "modest" showing, as Judge Chang previously found, Plaintiffs have not shown that the broad assortment of putative class members they propose are all "similarly situated" and "subject to a common policy or plan that violate[d] the law." (Dkt. 181) at 6–7, *see Gomez*, 306 F.R.D. at 173.

### 2. Plaintiffs Are Not "Similarly Situated" Because There Is No Common AT&T Policy That Precludes Call Center Associates from Being Paid for Overtime.

Nowhere in Plaintiffs' motion or brief do they present evidence of a uniform, nationwide AT&T policy that precludes call center associates from being paid for overtime. Nor could they. AT&T's "Reporting Time Worked Policy," which applies to "all employees of AT&T and its affiliates," clearly provides that "non-exempt employees must be paid appropriately for all time worked, including any overtime." P. Mot. Ex. V (Dkt. 149-23). Moreover, the policy makes clear that timekeeping methods are implemented at the local level and explicitly requires nonexempt employees to "accurately report all information ***required by their work group's timekeeping method*** for AT&T to determine all time worked (including any overtime) during each day and each week."[6] *Id.* (emphasis added).

In the face of such evidence, Plaintiffs' theory of commonality appears to be that AT&T's various methods by which employees report time worked may not catch *unreported* time, and that AT&T should have instead implemented some process that simply relieved employees altogether

---

[6] As Plaintiffs acknowledge, timekeeping methods vary by location because, among other reasons, some "states have additional requirements related to time reporting" and due to local differences in "collective bargaining agreements." P. Mot. Ex. V (Dkt. 149-23).

of any responsibility to report their time. AT&T is wholly prepared to defend the merits of its practices, but Plaintiffs' argument is simply irrelevant at this certification stage. Whether AT&T theoretically *might* have done something else says nothing about whether the *reality* that existed presents a common question that renders call center representatives across the country similarly situated. Stated differently, the legal sufficiency of different systems by which locations implemented their own particular solutions to capture unscheduled work time is the antithesis of a common question sufficient to render workers across that collection of different methods similarly situated. Rather, it requires determination of the adequacy of the array of different time-reporting methods in use at different AT&T facilities, which in turn will depend upon the specifics of each time-reporting method and the local practices by which it was implemented.[7]

### 3. AT&T Call Centers Adopted Various, Reasonable Methods to Implement "Exception" Timekeeping.

Illustrating the absence of any common question, AT&T's prior response brief describes the wide variety of reasonable methods that some (but not all) of its call centers use to implement an "exception" timekeeping method, under which employees are paid according to their schedule unless an "exception" is recorded to that schedule. D. Resp. Mem. (Dkt. 154) at 13–14. Though the Court need not reach the ultimate merits of Plaintiffs' claims at the certification stage, it is significant that even in Plaintiffs' characterization of these varying methods there is no dispute that once time worked is reported as an exception to an employee's schedule, the employee is paid for that time. Original Mot. (Dkt. 149) at 5–6. But critical at this juncture is the fact that, amongst the subset of call centers that use this "exception" method, self-reporting is done in different ways.

---

[7] Nor is it enough to support certification that all of the potential members are "human" on the theory that AT&T had an obligation to preclude human fallibility, as Plaintiffs suggest. P. Mot. (Dkt. 187) at 3. Indeed, if that level of generality alone were enough, it is difficult to conceive of a collective of any size or dimensions that would not be subject to certification.

D. Resp. Mem. (Dkt. 154) at 13–14.  Just within the Midwest region, exceptions to an employee's work schedule could be reported by filling out a physical form, reporting orally to one of the call center clerks, sending emails/instant messages/text messages to a manager, writing a note on a "scratch pad" for a manager, or entering time through a computer system.  *Id.* at 14.

The wide variation in reporting methods across call centers demonstrates why Plaintiffs are not similarly situated, and the differing ways in which individual Plaintiffs chose to utilize (or not to utilize) these methods only amplify the lack of any common policy or practice.  The record reflects that call center employees who worked at locations that required self-reporting received training on accurately reporting all time worked according to their call center's particular practices. *Id.* at 13.  Plaintiffs admitted that they knew they needed to report such time and knew how to do so.  *Id.*  And nearly all Plaintiffs who were required to do so did in fact report additional time worked, at least in some instances.  *Id.*  Nevertheless, a number of Plaintiffs contend that they failed to report additional time worked on some (but not all) occasions.  *Id.* at 8.  And reasons Plaintiffs give for *inconsistently* using the available time reporting methods are idiosyncratic, including that they "didn't remember to fill the form out" or considered it just to be a "headache." *Id.* at 15.  The validity of the various methods available to report time, and of the reasons individual employees may have failed to use them, will require evaluation on an individualized basis, and are not subject to a collective determination on a nationwide (or nearly nationwide) basis.

**C.    AT&T's Call-Routing Software Did Not Create Actual or Constructive Knowledge of Alleged Unpaid Overtime.**

Because they cannot point to any uniformly applied time-reporting method, Plaintiffs suggest that *any* method that required employees themselves to report their time was deficient because the Court should impute to AT&T knowledge of unreported time based on inferences it might have drawn from non-timekeeping electronic systems like its CTI call-routing software.  But

that notion fails on multiple fronts.

### 1. CTI Is Not a Timekeeping System.

As a threshold matter, CTI is ***not*** a timekeeping system. As the Court previously recognized, CTI is a call routing program "that connects representatives to the nationwide customer call queue" so that they can answer calls. Mem. Op. (Dkt. 181) at 3. Plaintiffs imagine an overly simplistic world in which data from the CTI system could simply be fed into AT&T's payroll system. But, among other flaws, that proposition ignores that CTI does not provide consistent and accurate information about an employee's work; an employee may be working while logged out (such as for a meeting with his or her supervisor or team) or logged in while not working (if, for example, he or she forgets to log out at the end of the day). *See* (Dkt. 154) at 22.

In fact, in parallel litigation to this case brought by the same counsel, *Mosley-Lovings v. AT&T Corp.*, No. 3:18-cv-1145-X (N.D. Tex.), a senior force analyst in charge of scheduling, exception coding, and payroll testified to the uncertainty of when employees were actually working based on CTI data. *See id.* at 27*;* Ex. L, Mosely-Lovings Trial Tr. 1390:8-16; 1436:3-7; 15-23 ("Q. And, again, in terms of Ms. Mosley-Lovings' actual log-ins on this day, did she comply with the company's policy of logging in and logging out for lunches or breaks? A. No, I do not see that on this. […] Q. Can you tell how long her -- the lunch she took actually was? A. No, I cannot. Q. And can you tell how long the breaks she took actually were? A. No, I cannot. Q. Can you tell whether she quit working before the specialty desk code shows? A. No, I cannot."). CTI was simply never designed to interface with timekeeping or payroll systems (particularly in any reliable fashion on the scale of many thousands of individual workers).

### 2. The Law Does Not Require Employers to Scour Every Possible System in Search of Unreported Work Time.

Even if Plaintiffs' theoretical timekeeping system were feasible and accurate, it would be

irrelevant here.  As the Seventh Circuit has observed, employers must "pay for all [overtime] work they know about" based on a "reasonable diligence standard."  *Allen v. City of Chicago*, 865 F.3d 936, 938, 943 (7th Cir. 2017).  The "reasonable diligence standard" looks at "what the employer *should* have known, not what it could have known."  *Id.* at 943 (emphasis added) (quotation omitted).  Contrary to Plaintiffs' misplaced argument, the law does not require employers to scour every possible system in search of evidence suggesting unreported work time.  *See*, *e.g.*, *Hertz v. Woodbury Cnty.*, 566 F.3d 775, 781–82 (8th Cir. 2009) (no constructive knowledge of police officers' overtime work even when defendant had access to non-payroll dispatch records that tracked officers' duty status).

Nor do courts hold employers to a duty to verify employee compliance with an employer's reporting requirements where doing so would be "extremely impractical" and "burdensome," especially if the employer has set up reasonable means to report their work.  *Allen*, 865 F.3d at 940, 945; *see also Gaines v. K-Five Constr. Corp.*, 742 F.3d 256, 271 (7th Cir. 2014) (no employer knowledge of overtime hours where employees failed to use provided forms to record time); *Hertz,* 566 F.3d at 782.  Compliance with the FLSA is a two-way street in that "the employee bears some responsibility for the proper implementation of the FLSA's overtime provisions" and "an employee cannot undermine his employer's efforts to comply with the FLSA by consciously omitting overtime hours for which he knew he could be paid."  *Wood v. Mid-America Mgmt. Corp.*, 192 F. App'x 378, 381 (6th Cir. 2006); *see White v. Baptist Mem'l Health Care Corp.*, 699 F.3d 869, 876 (6th Cir. 2012) ("[I]f an employer establishes a reasonable process for an employee to report uncompensated work time the employer is not liable for non-payment if the employee fails to follow the established process.").  Plaintiffs' attempt to impute knowledge also raises a severe policy concern: it would broadly render moot common employer procedures requiring employees

to accurately self-report time. *See Newton v. City of Henderson*, 47 F.3d 746, 749 (5th Cir. 1995) ("If we were to hold that the City had constructive knowledge that [the officer] was working overtime because [his City supervisor] had the ability to investigate whether or not [the officer] was truthfully filling out the City's payroll forms, we would essentially be stating that the City did not have the right to require an employee to adhere to its procedures for claiming overtime.").

This case closely tracks *Hertz*, where plaintiff police officers sued the county alleging failure to pay overtime compensation. 566 F.3d at 779. Like Plaintiffs here, the police officers argued that the county could have gone through dispatch program ("CAD") records—which recorded when an officer was on/off duty so dispatchers would know which officers were available to respond to an emergency—to determine whether or not its employees were working beyond their scheduled hours. *Id.* at 781–82. Rejecting that theory, the court found that "while County officials, including the Sheriff's Department payroll office, technically had access to the CAD records, they were not used for payroll purposes" and that "[i]t would not be reasonable to require that the County weed through non-payroll CAD records" especially because "the County ha[d] an established procedure for overtime claims that Plaintiffs regularly used." *Id.* at 782. The court found that "[t]he administrative burden concomitant with requiring the County to reference the CAD logs for the forty-some employees working in the Sheriff's Department each day would be severe." *Id.*

Here, the burden of reviewing non-payroll data for potentially 10,000 employees would be even more severe and impractical. Whenever CTI data varied from scheduled or reported time, AT&T would have to investigate and resolve differences over which source more accurately captured true time worked. Plaintiffs' convoluted and speculative theories that AT&T could have relied on its non-timekeeping system to measure unreported work time—time that employees

could have simply texted to their manager or jotted down on a pre-printed form, but for their own individualized reasons chose not to—imposes an even more unreasonable burden than those in *Hertz* and that the Seventh Circuit squarely rejected in *Allen*.

AT&T has "exercise[d] reasonable diligence 'by establishing a reasonable process for [employees] to report uncompensated work time.'" Mem. Op. (Dkt. 181) at 8 (quoting *Allen*, 865 F.3d at 938). Plaintiffs' proposed collective contends that purported members nevertheless "worked ***unreported*** post-shift overtime minutes," meaning that the time at issue was, by definition, time they could have reported but failed to do so despite those available methods. P. Mem. (Dkt. 188) at 1 (emphasis added). Each claimant in the proposed collective has thus played a uniquely individualized role in whatever underpayment they allege. Where AT&T has implemented simple, readily available means for reporting of any time, and employees have declined for their own varying reasons to use them, the law does not require AT&T to undertake complex and burdensome efforts to scour non-timekeeping data sources in an attempt to discover those omissions.

## III.   CONCLUSION

For the reasons stated above, AT&T respectfully requests that the Court deny Plaintiffs' motion for conditional certification.[8]

---

[8] Plaintiffs' request for production of a list of "all hourly non-exempt persons employed by Defendants who qualify under the [] class definition" and demands regarding the method and form of notice are premature. P. Mem. (Dkt. 188) at 5–7. To the extent that notice to any non-party potential claimants may become appropriate, AT&T requests the opportunity to address such issues in light of the specifics of the Court's rulings.

Dated: May 20, 2024                       Respectfully submitted,

                                           */s/ Karl G. Nelson*

                                           Karl G. Nelson, admitted pro hac vice
                                             TX Bar No. 14900425
                                           Ashley E. Johnson, admitted pro hac vice
                                             TX Bar No. 24067689
                                           GIBSON, DUNN & CRUTCHER LLP
                                           2001 Ross Avenue, Suite 2100
                                           Dallas, TX 75201
                                           Tel: (214) 698-3100
                                           Fax: (214) 571-2900
                                           KNelson@gibsondunn.com
                                           AJohnson@gibsondunn.com

                                           **COUNSEL FOR DEFENDANT**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was served on all counsel of record through the Court's ECF system as of the date file-stamped thereon.

*/s/ Karl G. Nelson*
Karl G. Nelson

Counsel for Defendant